**Jack Dale WALKER, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

No. PC–96–1003.

Court of Criminal Appeals of Oklahoma.

Jan. 23, 1997.

**330**

Kristi L. Christopher, Capital Post–Conviction, Oklahoma Indigent Defense System, Norman, for Petitioner on appeal.

### ORDER DENYING APPLICATION FOR POST–CONVICTION RELIEF, EVIDENTIARY HEARING AND DISCOVERY

CHAPEL, Presiding Judge:

Jack Dale Walker was tried by a jury and convicted of First Degree Malice Aforethought Murder in violation of 21 O.S.Supp. 1982, § 701.7(A) (Counts I and II), Assault and Battery with a Dangerous Weapon in violation of 21 O.S.Supp.1982, § 645 (Count III), and Assault with a Dangerous Weapon in violation of 21 O.S.Supp.1982, § 645 (Counts IV and V), in Tulsa County District Court Case No. CRF–89–18. In accordance with the jury's recommendation, the Honorable Clifford E. Hopper sentenced Walker to death on each of Counts I and II, twenty years imprisonment on Count III, and ten years imprisonment on each of Counts IV and V. Walker appealed these convictions and sentences to this Court and we affirmed.[1] The United States Supreme Court then denied his petition for writ of certiorari.[2]

In accordance with the recent amendments to the Uniform Post–Conviction Procedure Act,[3] Walker filed his Original Application for Post–Conviction Relief in this Court on August 16, 1996.[4] In his first proposition, Walker attacks the constitutionality of Oklahoma's amended capital post-conviction review statute. He argues that the new scheme, both on its face and as applied, denies him due process, equal and adequate access to the courts, and violates the Ex Post–Facto Clause. We recently considered and rejected this constitutional attack upon Oklahoma's current capital post-conviction procedure.[5] Accordingly, Walker's first proposition is denied.

 Before turning to Walker's remaining arguments, it is important—in light of the amended and more restrictive capital post-conviction statute—to reemphasize the narrow scope of review available on collateral appeal. First and foremost, the Post–Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal.[6] Rather, the post-conviction statutes have always provided applicants with only very limited grounds upon which to attack their "final" judgments.[7] Accordingly,

1. *Walker v. State*, 887 P.2d 301 (Okl.Cr.1994).

2. *Walker v. Oklahoma*, —— U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1994).

3. 22 O.S.Supp.1995, § 1089(D)(1) (application for post-conviction relief shall be filed in the Court of Criminal Appeals).

4. While Walker's application was filed outside the time limits set forth in section 1089(D)(1), it was timely filed according to the briefing schedule this Court set forth in *Sahib Al–Mosawi et. al v. State*, 929 P.2d 270 (Okl.Cr.1996).

5. *See Hatch v. State*, 924 P.2d 284 (Okl.Cr.1996).

6. *Fowler v. State*, 896 P.2d 566, 569 (Okl.Cr. 1995); *Fox v. State*, 880 P.2d 383, 384 (Okl.Cr. 1994).

7. "Final" means a case "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed ..." *Teague v. Lane*, 489 U.S. 288, 295, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989) (*quoting Allen v. Hardy*, 478 U.S. 255, 258, n. 1, 106 S.Ct. 2878, 2880, n. 1, 92 L.Ed.2d 199 (1986)).

post-conviction claims which could have been raised in previous appeals but were not are generally considered waived;[8] and, post-conviction claims which were raised and addressed in previous appeals are barred as *res judicata.*[9]

■ These procedural bars still apply to claims raised by capital post-conviction applicants appealing under the amended section 1089. However, the recent amendments to that statute have made it even more difficult for capital post-conviction applicants to avoid procedural limitations on collaterally asserted claims. Under section 1089, only those capital post-conviction claims that "[w]ere not and could not have been raised"[10] on direct appeal will escape the effects of waiver and *res judicata.*[11] Examples of capital post-conviction claims which "could not have been raised"[12] on direct appeal are (1) ineffective assistance of trial or appellate counsel claims that meet the statute's definition of ineffective assistance of trial or appellate counsel,[13] or (2) claims

> (a) [that were] not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state … or (b) [that are based upon] a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state.…[14]

Once a capital post-conviction applicant has demonstrated that a claim was not and could not have been previously raised on direct appeal and thus should not be held procedurally barred, there remains another prerequisite to full review. Claims which successfully avoid procedural bar will ultimately be afforded collateral review only if, in addition, they "[s]upport a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent."[15]

■ The amendments to the capital post-conviction review statute reflect the legislature's intent to honor and preserve the legal principle of finality of judgment,[16] and we will narrowly construe these amendments to effectuate that intent. Given the newly refined and limited review afforded capital post-conviction applicants, we must also emphasize the importance of the direct appeal as the mechanism for raising all potentially meritorious claims. Because the direct appeal provides appellants their only opportunity to have this Court fully review *all* claims of error which might arguably warrant relief, we urge them to raise all such claims at that juncture.

We now turn to Walker's remaining post-conviction claims. Walker argues in his second proposition that he was denied his right to the effective assistance of *trial* counsel. Walker claims that his trial attorney was ineffective in the following ways: he failed to adequately prepare for trial; he failed to

**8.** *Moore v. State,* 889 P.2d 1253, 1255–56 (Okl. Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Johnson v. State,* 823 P.2d 370, 372 (Okl.Cr.1991), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992).

**9.** *Moore,* 889 P.2d at 1255; *Walker v. State,* 826 P.2d 1002, 1005 (Okl.Cr.), *cert. denied,* 506 U.S. 898, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992).

**10.** 22 O.S.Supp.1995, § 1089(C)(1).

**11.** Walker does not raise and this opinion does not establish procedural guidelines to assess "actual innocence" claims.

**12.** We do not intend to suggest that these are the only types of claims that could fall within the "were not and could not have been raised" category.

**13.** 22 O.S.Supp.1995, § 1089(D)(4)(b)(1) & (2).

**14.** 22 O.S.Supp.1995, § 1089(D)(9)(a) & (b).

**15.** 22 O.S.Supp.1995, § 1089(C)(2). We note that when a capital post-conviction applicant asserts an ineffective assistance of *appellate* counsel claim which meets the requirements of section 1089(D)(4)(b)(2), review is possible under the terms of the statute ("If the court makes this finding the court may consider the claim.…"). In other words, this type of claim need not also meet the requirements of section 1089(C)(2) in order to obtain review on the merits.

**16.** "One of the law's very objects is the finality of its judgments." *McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991).

comply with the trial court's discovery order; he failed to request a proper competency evaluation, present available evidence or ask for a continuance to prepare for the competency hearing; he failed to seek suppression of Walker's pretrial statements; he failed to seat a fair and impartial jury; he failed to investigate or present evidence to negate the element of specific intent and he failed to request an intoxication defense instruction; he failed to present available evidence to support the requested first degree manslaughter instruction; he failed to present evidence that Walker was heavily medicated during trial; he failed to object to the late filing of the Bill of Particulars; he failed to object or request a continuance when the State filed an amended notice of evidence to be used in aggravation; and, he failed to investigate and present all of the evidence available in second stage.

■ Under the strict terms of the new statute, an ineffective assistance of trial counsel claim could not have been raised on direct appeal if it requires "factfinding outside the direct appeal record. . . ."[17] In other words, ineffective assistance of trial counsel claims are properly raised and may be considered on post-conviction only if they are based upon facts which were not available to the applicant's direct appeal attorney and thus could not have been made part of the direct appeal record. Stated in prohibitive terms, this Court may not review Walker's post-conviction claims of ineffective assistance of trial counsel if the facts generating those claims were available to Walker's direct appeal attorney and thus either *were* or *could have been* used in his direct appeal.[18] Walker's ineffective assistance of trial counsel claims do not turn on facts unavailable at the time of his direct appeal.

Walker does support some of his ineffective assistance of trial counsel allegations with affidavits from Walker himself, from trial counsel and other attorneys employed by the Tulsa County Public Defender's office, from a doctor who recently examined Walker and from a juror who determined Walker's guilt and sentence. As additional support for his trial counsel ineffectiveness claims, Walker also provides medical records both from the hospital which treated him immediately after the murders and from the Tulsa County jail where he was subsequently incarcerated.[19] Despite the fact that these documents were not physically part of Walker's direct appeal record, it appears that the facts contained in them were available to his direct appeal attorney and thus could have been argued on direct appeal. For instance, Walker provides this Court with no evidence to suggest that Walker, his trial counsel, the other Tulsa County Public Defenders and the juror who have given affidavits for this post-conviction appeal were unavailable or unwilling at the time of Walker's direct appeal to provide sworn statements. Walker has also failed to provide this Court with any evidence to suggest that his hospital and county jail medical records which are included in this post-conviction appeal were either not in existence at the time his direct appeal was filed or were kept from his direct appeal attorney. Because the determination of Walker's ineffective assistance of trial counsel claims does not require factfinding outside the scope of information available to his attorney at the time of his direct appeal, those claims are not properly raised in this post-conviction appeal and will not be considered. Accordingly, Walker's second proposition is denied.

Walker argues in his third proposition that he was denied his right to the effective assistance of *appellate* counsel. He first argues that his direct appeal attorney, Johnie

---

17. 22 O.S.Supp.1995, § 1089(D)(4)(b)(1).

18. Because Walker did not raise an ineffective assistance of trial counsel claim on direct appeal, many of the facts he now asserts to support his trial counsel ineffectiveness claims were obviously not included in his direct appeal record. Thus, in determining whether Walker's current trial counsel ineffectiveness claims have been properly raised in this post-conviction application, we must ascertain whether the facts Walker now asserts to support those claims were *available* to his direct appeal attorney and thus *could have been* made part of the direct appeal record.

19. The remainder of his ineffective assistance claims are supported only by the allegations themselves, which criticize trial counsel's performance in certain instances.

O'Neal, had a conflict of interest that caused him to omit all the instances of trial counsel's ineffectiveness previously alleged in proposition two. Walker next argues that O'Neal was ineffective in failing to raise the following three substantive issues which he claims would have warranted relief on direct appeal: (1) trial court improperly instructed the jury on the presumption of "not guilty" rather than on the presumption of innocence; (2) police improperly obtained Walker's statement and there was no *Jackson v. Denno* [20] hearing conducted to determine its voluntariness; and (3) Walker's competency was not properly determined.

In the context of an ineffective assistance of *appellate* counsel allegation, the supposedly mishandled claim "could not have been previously raised" and thus will not be procedurally barred if

> it is a *claim* contained in an original timely application for post-conviction relief *relating* to ineffective assistance of appellate counsel and the Court of Criminal Appeals first finds that if the *allegations* [of ineffectiveness] in the application were true, the performance of appellate counsel constitutes the denial of reasonably competent assistance of appellate counsel under prevailing professional norms.[21]

If this Court initially determines that appellate counsel was ineffective, we "may [then] consider the claim [appellate counsel allegedly mishandled] during the post-conviction proceeding or, if appropriate, during the direct appeal." [22]

■■■ According to these guidelines,[23] the threshold inquiry is (1) whether appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. If a petitioner establishes that his or her appellate counsel actually did the thing supporting the allegation of ineffectiveness, the next question is (2) whether such performance was deficient under the first prong of the two-pronged test in *Strickland v. Washington.*[24] Of course, proving attorney ineffectiveness is no easy task, and the burden is on capital post-conviction petitioners to set forth sufficient facts and law to enable this Court to fully assess appellate counsel's allegedly deficient performance. If a petitioner meets his or her heavy burden to prove deficient attorney performance, we may then consider the mishandled substantive claim. The question then becomes (3) whether such a claim meets the second prerequisite to capital post-conviction review.[25]

This three-tiered procedural scheme [26] recognizes that the heart of an ineffective assis-

---

**20.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**21.** 22 O.S.Supp.1995, § 1089(D)(4)(b)(2) (emphasis added).

**22.** *Id.* At this point, a petitioner will have established that such claim "could not have been previously raised" and thus will have met the first prerequisite to capital post-conviction review under section 1089(C)(1).

**23.** The dissent states that this Order "effectively overturns the test this Court has used for ineffective assistance of counsel." On the contrary, it is the Legislature which has modified the ineffective assistance of appellate counsel analysis that this Court has traditionally followed in capital post-conviction cases. The three-tiered procedure set forth at 22 O.S.Supp.1995, § 1089(D)(4)(b)(2) does not include the traditionally applied two-pronged *Strickland* analysis. Because this statute governs this Court's review of capital post-conviction appeals, we will now apply the three-tiered procedure it has mandated.

**24.** 466 U.S. 668, 677–78, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984). The second "prejudice" prong is not applied at this juncture.

**25.** 22 O.S.Supp.1995, § 1089(C)(2) (the claim must support a conclusion "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent."). Once the claim is deemed properly raised, this Court would then determine the appropriate relief.

**26.** We recognize that this analysis differs substantially from the one we applied in two recently published capital post-conviction cases which fell under the new statute. *See Medlock v. State,* 927 P.2d 1069 (Okl.Cr.1996); *Spears v. State,* 924 P.2d 778, 780–81 (Okl.Cr.1996). Since those cases were handed down, we have reconsidered our interpretation and application of section 1089(D)(4)(b) dealing with ineffective assistance of appellate counsel claims, and will henceforth follow the scheme set forth in this case. Further, we have reviewed the ineffective assistance of appellate counsel allegations in both *Medlock* and *Spears* in accordance with the *Walker* three

tance of appellate counsel allegation is the predicate substantive claim which counsel purportedly mishandled, and which, but for the ineffective assistance allegation, would automatically be procedurally barred.[27] Capital post-conviction petitioners desire full review of technically waived substantive claims, and they have discovered that an ineffective assistance of appellate counsel allegation may achieve this goal.[28] Under the terms of the new statute, capital post-conviction petitioners must prove deficient attorney performance as a precondition to having their underlying claim reviewed. Accordingly, they must devote much greater time and attention to what counsel did or did not do and why counsel's acts or omissions constituted deficient performance.

Before the enactment of the new statute, post-conviction petitioners would simply argue their barred claims and summarily conclude that their appellate counsel's decision not to raise them or manner of raising them constituted ineffective assistance under the two-pronged *Strickland* test. In applying the prejudice prong of the *Strickland* test to these allegations, this Court was essentially forced to examine the merits of the allegedly mishandled but technically waived claim in order to determine whether it was so serious as to deprive the defendant of a fair trial and thus would have forced a reversal or sentence modification on direct appeal. By eliminating a capital post-conviction petitioner's burden to prove prejudice for ineffective assistance of appellate counsel allegations, the pivotal and narrow threshold issue is now simply whether appellate counsel's *perfor-*

*mance* was deficient under prevailing professional norms. This issue may be fully analyzed without examining the merits of the technically waived, substantive claim which was allegedly mishandled.

 Before turning to Walker's specific claims of appellate counsel ineffectiveness, we must revisit the duties appellate attorneys owe their clients and the guidelines which this Court will follow in assessing whether such duties were adequately executed in a given case. According to *Strickland*,[29] an attorney owes the client 1) a duty "of loyalty, ... to avoid conflicts of interest."[30] An attorney also owes the client 2) an overarching duty to advocate the client's cause.[31] More specific duties include 3) consulting with the client on important decisions, 4) keeping the client informed of important developments in the case, 5) exercising the degree of skill and knowledge that will render the appellate process reliable[32] 6) making reasonable investigations or making reasonable decisions that render particular investigations unnecessary.[33] In addressing ineffective assistance of appellate counsel claims, this Court has concluded that appellate counsel owes the client and 7) a duty to raise relevant issues for this Court to consider.[34] This obligation does not, however, require appellate counsel to raise all non-frivolous issues available.[35]

 In assessing whether appellate counsel sufficiently performed these duties, our overriding concern is "whether counsel's assistance was reasonable considering all the circumstances."[36] To preserve both appel-

---

tiered analysis, and have concluded that the outcome in those cases would have been the same under either approach.

**27.** *See Berget v. State*, 907 P.2d 1078, 1083 (Okl. Cr.1995) ("It is no secret that the post-conviction procedure is routinely used as a vehicle for a myriad of claims that could, and should, have been raised on direct appeal. Disguising the claims as 'ineffective assistance of counsel', be it trial or appellate counsel, fools no one.").

**28.** *Id.*

**29.** The opinion in *Strickland* sets forth standards by which to assess the effectiveness of *trial* counsel. While these standards can be applied to

appellate counsel's performance, they must be slightly altered to properly fit within that context.

**30.** *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065.

**31.** *Id.*

**32.** *Id.*

**33.** *Id.* at 691, 104 S.Ct. at 2066.

**34.** *Hooks v. State*, 902 P.2d 1120, 1124 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1440, 134 L.Ed.2d 561 (1995).

**35.** *Id.*

**36.** *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065.

late attorneys' constitutionally protected independence and their wide latitude in making tactical decisions, however, this Court must be "highly deferential"[37] in scrutinizing their performance. Accordingly, we must evaluate appellate counsel's challenged conduct from counsel's perspective at the time; indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; and, recognize that there are countless ways to provide effective assistance in a given case.[38] Finally, when a client has "given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."[39]

■ We now turn to Walker's specific allegations of appellate counsel ineffectiveness. Walker first alleges that O'Neal was ineffective because a conflict of interest caused him to omit from his direct appeal brief meritorious claims of trial counsel ineffectiveness. Because the record reveals that O'Neal in fact omitted these claims on direct appeal, Walker has met his threshold burden to prove that the "conduct" he attacks as deficient actually occurred. We thus reach the next level of inquiry, which is whether O'Neal's omission of these claims constituted deficient performance.

Both O'Neal and trial counsel were employed by the Tulsa County Public Defender's office. O'Neal, who was then the Chief Tulsa County Public Defender and thus trial counsel's supervisor, appeared with his assistant public defender at counsel's table but was minimally involved in defending Walker at trial. Walker argues that O'Neal, having participated in Walker's trial and having also been largely responsible for lead trial counsel's performance, failed to raise ineffective assistance claims on direct appeal for fear of exposing his own or his assistant's poor legal performance and judgment.

While O'Neal was the Chief Tulsa County Public Defender and thus trial counsel's supervisor at the time of Walker's trial, there is nothing inherent in this relationship to sug-

gest that it dictated O'Neal's subsequent decision not to raise ineffective assistance of trial counsel on direct appeal—especially in light of the fact, conceded by Walker, that O'Neal's involvement at trial was minimal. Additionally, Walker raised no objection to being represented on appeal by the Tulsa County Public Defender's office or more specifically by Mr. O'Neal. Walker has thus failed to establish that O'Neal's decision not to argue trial counsel's ineffectiveness was in any way driven by O'Neal's minimal involvement in the trial or his employment relationship with trial counsel.

Walker has failed to establish that O'Neal's omission on direct appeal of ineffective assistance of trial counsel claims was driven by an actual conflict of interest. Thus, Walker's trial counsel ineffectiveness claims remain procedurally barred and will not be considered on the merits.

■ Walker next alleges that O'Neal was ineffective because he failed to raise three meritorious substantive issues on direct appeal. First, Walker alleges O'Neal was ineffective because his fear of Judge Hopper caused him to omit an appellate proposition attacking the Judge's improper presumption of "not guilty" instruction. Because the record reveals that O'Neal in fact omitted this argument on direct appeal, Walker has met his threshold burden to prove that the "conduct" he attacks as deficient actually occurred. We thus reach the next level of inquiry, which is whether O'Neal's omission of this claim constituted ineffective assistance.

Walker's evidence of O'Neal's allegedly unprofessional judgment includes the following: O'Neal's affidavit in which he states that he did not attack the instruction on appeal because he was afraid that Judge Hopper—who had administered it—would retaliate by firing him; a memo to some public defenders, dated four years after the filing of Walker's direct appeal brief, in which O'Neal stresses the importance generally of preserving instructional error in trials conducted by Judge

**37.** *Id.* at 689, 104 S.Ct. at 2065.

**38.** *Id.*

**39.** *Id.* at 691, 104 S.Ct. at 2066.

Hopper; and affidavits from two assistant Tulsa public defenders who worked for O'Neal at the time of Walker's direct appeal, stating that they thought O'Neal intended to supplement Walker's appeal record with a proposition raising the "presumed not guilty" instructional error.

■■■ When a criminal defense attorney attests to his or her own ineffectiveness in an effort to obtain relief for a capital post-conviction applicant, that affidavit will be thoroughly scrutinized and will rarely, if ever, be solely relied upon to support an allegation of deficient performance. Here, O'Neal's affidavit supplies the *only* evidence that his judgment in Walker's direct appeal was compromised because of his fear of Judge Hopper.[40] Perhaps more significantly, however, a review of O'Neal's direct appeal brief in Walker's case reveals a number of attacks upon Judge Hopper's decision-making and courtroom conduct. Even assuming Walker had presented compelling evidence in addition to O'Neal's affidavit, we would—in light of his direct appellate arguments—be hard-pressed to find that O'Neal's professed fear of Judge Hopper's wrath affected his direct appeal strategy in Walker's case only insofar as the "presumed not guilty" proposition was concerned.

Walker's proffered evidence does not demonstrate that O'Neal purposefully omitted meritorious appeal issues because he wished to avoid angering Judge Hopper. Walker has thus failed to establish that O'Neal's performance was deficient. Accordingly, Walker's substantive claim regarding the "presumed not guilty" instructional error remains procedurally barred and will not be considered on the merits.

The second set of substantive claims which Walker alleges O'Neal ineffectively omitted are (1) that police improperly obtained Walker's statement and (2) that there was no *Jackson v. Denno* hearing to determine its voluntariness. Because the record reveals

that O'Neal in fact omitted these arguments on direct appeal, Walker has met his threshold burden to prove that the "conduct" he attacks as deficient actually occurred. We thus reach the next level of inquiry, which is whether O'Neal's omission of these claims constituted ineffective assistance.

■■■ In alleging ineffective assistance in these instances, Walker makes no attempt to establish that O'Neal breached any duties owed to him, or that O'Neal's judgment was unreasonable under the circumstances or did not fall within the wide range of professional assistance. To prove that O'Neal's performance was deficient, Walker instead reasons that an attorney who omits arguably meritorious appellate claims is always ineffective. This is simply not the case, and such a conclusory allegation, standing alone, will never support a finding that an attorney's performance was deficient.

Walker has failed to establish that O'Neal was ineffective in failing to attack on direct appeal the reliability and admissibility of Walker's statements to police. Thus, Walker's substantive claims concerning his statements to police remain procedurally barred and will not be considered on the merits.

Thirdly, Walker alleges that O'Neal was ineffective because he did not raise any issues on direct appeal concerning Walker's competency and how it was determined. Because O'Neal did not raise these issues on direct appeal, Walker has established that the "conduct" which he claims was deficient actually occurred. We thus reach the next level of inquiry, which is whether O'Neal's omission of these competency issues constituted ineffective assistance.

■■■ Walker initially alleges O'Neal was ineffective because he failed to attack the procedure the trial court followed in determining his competency. However, Walker does not present facts to show that O'Neal's

---

**40.** The two additional affidavits convey the assistant public defenders' impression that O'Neal intended to attempt to supplement Walker's direct appeal record with a proposition raising the "presumed not guilty" instructional error, but do not support a conclusion that O'Neal failed to raise this issue for fear of Judge Hopper's retribution. Likewise, O'Neal's memo to public defenders merely suggests that, well after Walker's appeal brief was filed and before *Flores* was handed down, O'Neal was urging attorneys who practiced in Judge Hopper's court to preserve instructional error.

omission of this argument on direct appeal was unreasonable under the circumstances or did not fall within the wide range of professional assistance. Instead, Walker describes why he believes the trial court's procedure was flawed, implies that O'Neal should have also found fault with the trial court's procedure, and concludes that O'Neal's failure to attack the allegedly faulty procedure automatically constitutes ineffective assistance of counsel. Again, we cannot and will not find that an attorney was ineffective simply because he or she failed to press an arguably meritorious claim.

Walker next claims that he was tried while incompetent, and that O'Neal should have recognized this fact and argued it on direct appeal. While Walker offers a number of affidavits from various professional and lay people who now maintain that Walker was incompetent to stand trial, he does not offer any facts to support his present conclusion that O'Neal's decision not to attack competency on direct appeal constituted deficient performance. Walker does not present facts to show that O'Neal's omission of this argument on direct appeal was unreasonable under the circumstances or did not fall within the wide range of professional assistance. Again, an attorney's failure to raise an arguably meritorious claim on appeal—absent some additional proof that such failure was professionally unreasonable under the circumstances—will never support a finding of deficient performance.

Walker has failed to establish that O'Neal was ineffective in omitting competency issues on direct appeal. Accordingly, Walker's substantive claims regarding the trial court's determination of his competency remain procedurally barred and will not be reviewed on the merits. These allegations and proposition three are denied.

■■■ For his fourth proposition, Walker claims that his conviction must be reversed because the trial court improperly instructed the jury that he was "presumed not guilty." In *Flores v. State*,[41] handed down five years after Walker filed his direct appeal brief-in-chief, this Court reversed a conviction on the basis of this flawed instruction, holding that it unconstitutionally diluted the presumption that guilt is to be proven beyond a reasonable doubt. Walker now argues that he may raise this instructional issue for the first time on post-conviction since the *Flores* opinion settling that issue constitutes an intervening change in the law.[42]

Walker did not challenge the "presumed not guilty" instruction on direct appeal. He has thus waived this issue for purposes of capital post-conviction review, unless he can now demonstrate that it "could not have been raised in [his] direct appeal."[43] Under section 1089, Walker's challenge to this instruction "could not have been raised" or was "unavailable" to his direct appellate counsel if it

(a) was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before [the] date

---

41. 896 P.2d 558, 562 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 548, 133 L.Ed.2d 450 (1996).

42. 22 O.S.Supp.1995, § 1089(D)(9)(a) & (b). Under the previous capital post-conviction statutes, we could have applied our decision in *Flores* to this collateral appeal on the ground that the decision constituted an intervening change in the law. *See Rojem v. State,* 829 P.2d 683, 684 (Okl.Cr.) *cert. denied,* 506 U.S. 958, 113 S.Ct. 420, 121 L.Ed.2d 343 (1992) (post-conviction claims which are based upon intervening changes in constitutional law and which impact judgment or sentence will not be procedurally barred); *James v. State,* 818 P.2d 918, 920–21 (Okl.Cr.), *cert. denied,* 502 U.S. 1111, 112 S.Ct. 1214, 117 L.Ed.2d 452 (1991) (post-conviction

claims based upon intervening change in law which did not exist at time of previous appeals will not be procedurally barred). *See also* 22 O.S.1991, § 1086. However, through the amendments set forth in section 1089(D)(9)(a) & (b), the legislature has greatly circumscribed this Court's power to apply intervening changes in the law to capital post-conviction applicants. *Compare Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989) ("Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect.").

43. 22 O.S.Supp.1995, § 1089(C)(1).

[Walker's direct appeal brief was due], or (b) is a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state. . . .[44]

We find that as of the date of his direct appeal,[45] the legal basis of Walker's current attack on the "presumed not guilty" instruction was either recognized by or could have been reasonably formulated from a final decision of this Court. In *Flores*, we noted that this Court has for years stressed the fundamental importance of the "presumption of *innocence*" instruction. That instruction "fixes the burden of proof and designates that the duty rests upon the State to produce evidence and to effect persuasion beyond a reasonable doubt before the jury is authorized to convict."[46] Further, that instruction is mandated by a state statute which provides that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted."[47] Given the decades-old Oklahoma case and statutory law upholding the presumption of innocence instruction, we find that the "legal basis" of Walker's current challenge to the "presumed not guilty" instruction administered at his trial was recognized by and could have reasonably been formulated from a final decision of this Court at the time he filed his direct appeal brief in this case.

We further find that *Flores* is not a "new" rule of constitutional law.[48] According to the United States Supreme Court, a case announces a "new" rule when it "breaks new ground or imposes a new obligation" . . . or if its result "was not *dictated* by precedent existing at the time the defendant's conviction became final."[49] Far from breaking new ground or imposing a new obligation upon the State, this Court's decision in *Flores* simply reiterated and enforced long standing case law and statutory rules. Because the legal basis of Walker's current constitutional attack on the "presumed not guilty" instruction administered at his trial was "available" at the time of his direct appeal, his failure to raise it at that juncture has rendered it waived for purposes of this collateral attack. Proposition four does not meet the first prerequisite to post-conviction review and is denied.

Walker also claims in proposition eight[50] that *Cooper v. Oklahoma*[51] constitutes an intervening change in case law which entitles him to relief.[52] At the time of Walker's post-examination competency hearing, Oklahoma's statutes placed upon him the burden of proving his incompetence by clear and convincing evidence.[53] The Supreme Court in *Cooper* subsequently concluded that this heavy burden violates due process, reasoning that "requiring the defendant to prove incompetence by clear and convincing evidence imposes a significant risk of an errone-

**44.** 22 O.S.Supp.1995, § 1089(D)(9)(a) & (b).

**45.** Walker filed his direct appeal brief on February 23, 1990.

**46.** *Flores*, 896 P.2d at 561 (*citing Cochran v. State*, 4 Okl.Cr. 393, 114 P. 747, 748 (1910)).

**47.** 22 O.S.1991, § 836.

**48.** Even if we were to find that *Flores* constituted a "new" rule of constitutional law, review of Walker's *Flores* claim would not be automatic. Under that circumstance, we could review that claim only if *Flores* had been given retroactive effect by this Court, which it has not. New rules of constitutional law will generally not be applied retroactively to cases on collateral review. *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073. There are two exceptions to this general rule of nonretroactivity. A new rule of constitutional law will be

applied on collateral review if it (1) places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; or (2) "requires the observance of 'those procedures that . . . are 'implicit in the concept of ordered liberty.'" *Id.* (Citations omitted).

**49.** *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070.

**50.** We are reviewing proposition eight out of turn because of its similarities to proposition four.

**51.** —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

**52.** *See supra* n. 42.

**53.** 22 O.S.Supp.1985, § 1175.4(B).

ous determination that the defendant is competent." [54]

Walker did not challenge the clear and convincing standard on direct appeal. He has thus waived this issue for purposes of capital post-conviction review, unless he can now demonstrate that it "could not have been raised in [his] direct appeal." [55] Under section 1089, Walker's challenge to this burden of proof "could not have been raised" or was "unavailable" to his direct appellate attorney if the legal ground supporting it either was not recognized by a court as precedent at the time of his direct appeal or is a new rule of constitutional law which has been given retroactive effect. [56]

We find that as of the date of his direct appeal, [57] the legal basis of Walker's constitutional attack on Oklahoma's "clear and convincing" burden of proof in competency proceedings was either recognized by or could have been reasonably formulated from a final decision of the United States Supreme Court. The Supreme Court in *Cooper* noted how its previous decisions had "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" [58] In fact, the Supreme Court in *Cooper* explained at great length how years of case and statutory law supported and even dictated its holding. Given the unquestionably fundamental nature of a criminal defendant's right not to be tried while incompetent and the overwhelming federal case law and

state statutory protection that right has traditionally been afforded, [59] we find that the "legal basis" of Walker's constitutional attack upon Oklahoma's "clear and convincing" burden of proof in competency proceedings was recognized by and could have reasonably been formulated from a final decision of the United States Supreme Court at the time he filed his direct appeal brief in this case. [60]

We further find that *Cooper* is not a "new" rule of constitutional law. [61] According to the United States Supreme Court, a case announces a "new" rule when it "breaks new ground or imposes a new obligation on the States or the Federal Government" ... or if its result "was not *dictated* by precedent existing at the time the defendant's conviction became final." [62] Far from breaking new ground or imposing new obligations upon the States or Federal Government, the decision in *Cooper* simply applied well established constitutional principles to facts generated by a rather new state statute. Further, the result in *Cooper* was effectively dictated by long standing precedents requiring that States "jealously guard" fundamental constitutional rights. [63] Because the legal basis of Walker's current constitutional attack on Oklahoma's burden of proof in competency proceedings was "available" at the time of his direct appeal, his failure to raise it at that juncture has rendered it waived for purposes of this collateral attack. Proposition eight does not meet the first prerequisite to capital post-conviction review and is denied.

---

**54.** *Cooper,* —— U.S. at ——, 116 S.Ct. at 1381.

**55.** 22 O.S.Supp.1995, § 1089(C)(1).

**56.** *See supra* n. 44.

**57.** Walker filed his brief in chief on February 23, 1990.

**58.** *Cooper,* —— U.S. ——, 116 S.Ct. at 1376 (*quoting Medina v. California,* 505 U.S. 437, 453, 112 S.Ct. 2572, 2581–82, 120 L.Ed.2d 353 (1992)).

**59.** The Supreme Court in *Cooper* noted that Oklahoma is one of only four states that imposes the stringent "clear and convincing" burden of proof on defendants who contest their competence. *Id.* at ——, 116 S.Ct. at 1380.

**60.** *Compare Commonwealth v. Tizer,* 454 Pa.Super. 1, 684 A.2d 597 (1996) (change in the law effected by *Cooper* was not wholly unanticipated).

**61.** Even if we were to find that *Cooper* constituted a "new" rule of constitutional law, review of Walker's *Cooper*–based claim would not be automatic. *See supra* n. 42.

**62.** *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070.

**63.** *See Cooper,* —— U.S. at ——, 116 S.Ct. at 1381 (citing *Jacob v. New York City,* 315 U.S. 752, 752–53, 62 S.Ct. 854, 854–55, 86 L.Ed. 1166 (1942)). *See also Yates v. Aiken,* 484 U.S. 211, 216–17, 108 S.Ct. 534, 538, 98 L.Ed.2d 546 (1988) (holding that decision in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), did not announce a new rule because it "was merely an application of the principle that governed [their] decision in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which had been decided before [the defendant's] trial took place.").

■ Walker claims in his fifth proposition that the trial court erred in instructing the jury that the State had to prove beyond a reasonable doubt "all the material allegations contained in the Information...." Again, by failing to raise this issue on direct appeal, Walker has waived it for purposes of post-conviction review unless he can demonstrate that this issue could not have been raised at that juncture. Walker does not argue and we do not find that this issue "could not have been raised" or was "unavailable" on direct appeal. Accordingly, proposition five does not meet the first prerequisite to capital post-conviction review and is denied.[64]

In proposition six, Walker complains that the trial court failed to follow the statutorily mandated procedure to determine his competency. In proposition seven, Walker argues that he was sentenced to death while incompetent. In proposition nine, Walker argues that juror misconduct deprived him of a fair trial. Walker did not raise these issues on direct appeal and has not even attempted to demonstrate that he could not have done so. Accordingly, propositions six, seven and nine do not meet the first prerequisite to capital post-conviction review and are denied.

■ Walker also requests an evidentiary hearing and discovery. We have held that post-conviction applicants are not entitled to evidentiary hearings, and the new capital post-conviction statute does not specifically address motions for evidentiary hearings. Under the statute, it is this Court's responsibility to assess the propositions raised and determine whether "controverted, previously unresolved factual issues material to the legality of the applicant's confinement" exist.[65]

If we encounter such factual controversies, we are free to issue an order—such as an order for an evidentiary hearing—to help facilitate post conviction review.[66]

In analyzing Walker's nine propositions of error, we found no material factual issues that would warrant an evidentiary hearing. Walker's motion relies solely upon the claims set forth in these propositions, and does not present any additional factual issues that would warrant an evidentiary hearing. Walker's motion for evidentiary hearing is therefore denied.

■ Walker's request for discovery is also denied. Walker does not argue that the trial court denied him full and fair discovery, and in fact concedes that no trial discovery orders were issued. Rather, Walker claims that his ability to raise meaningful post-conviction claims is conditioned upon his ability to discover various documents now supposedly in police possession. This Court has never allowed unfettered discovery in post-conviction proceedings,[67] and the new post-conviction statute in no way broadens a petitioner's discovery rights. Walker has failed to explain why he did not obtain at trial the material he now seeks. We thus find that he has waived any right he may have had to discover the now sought after documentation.[68] Accordingly, Walker's motion for discovery is denied.

After carefully reviewing Walker's applications for post-conviction relief, discovery and an evidentiary hearing, we conclude (1) that there exist no controverted, previously unresolved factual issues material to the legality of Walker's confinement, (2) that Walker could have previously raised his collaterally

---

**64.** At the close of this proposition, Walker alleges that both his trial attorney and his direct appeal attorney ineffectively handled this claim. Walker provides no evidence to establish that his ineffective assistance of trial counsel claim requires factfinding outside the direct appeal record. He also offers no evidence supporting his attack on his direct appeal attorney's allegedly deficient performance. Instead, he relies on the mistaken assumption that omission of a potentially meritorious claim is a clear sign of ineffectiveness. Accordingly, neither allegation meets the prerequisites to capital post-conviction review.

**65.** 22 O.S.Supp.1995, § 1089(D)(4)(a)(1).

**66.** 22 O.S.Supp.1995, § 1089(D)(4)(a)(1).

**67.** *Rojem v. State*, 925 P.2d 70, 74 (Okl.Cr.1996).

**68.** Rule 9.7(D)(3), *Rules of the Court of Criminal Appeals*, 22 O.S.Supp.1996, Ch. 18, App, provides that a post-conviction discovery request will be granted only after a petitioner establishes (1) that trial court discovery orders were probably not honored; and (2) that the material sought would have resulted in a different trial outcome. Walker cannot meet the first prong because he concedes there was no trial court discovery order.

asserted grounds for review, and (3) that the current post-conviction statutes warrant no relief.[69] Accordingly, Walker's Application for Post–Conviction Relief and Application for an Evidentiary Hearing and Discovery are **DENIED.**

STRUBHAR, V.P.J., and JOHNSON, J., concur.

LUMPKIN, J., concurs in results.

LANE, J., dissents.

LUMPKIN, Judge, concurring in results:

Because I cannot agree with the analysis dealing with ineffective assistance of appellate counsel, I must concur in result.

I think everyone on the Court can agree that the revised death post-conviction statute could have been better written: the language is vague at best and utterly confusing at worst. Nowhere is this more evident than the language in section 1089(D)(4)(b)(2), dealing with ineffective assistance of counsel. Based on this language, my colleague's interpretation is one possible interpretation. However, I do not think this interpretation is defensible, any more than I believe the Legislature by using such imprecise language intended to change the way this Court has long looked at a claim dealing with ineffective assistance of counsel. As I shall point out below, the interpretation used in the order creates a standard which is more lenient, not stricter, than the interpretation this Court uses on direct appeal.

### I.

As I understand Judge Chapel's Order, it effectively overturns the test this Court has used for ineffective assistance of counsel. The opinion would abandon the traditional *Strickland* [1] test in favor of a "three-pronged" test set forth on pages 6–7 of the opinion. Specifically, this Court will ask (1) whether counsel actually committed the act which gives rise to the allegation of ineffectiveness; (2) if yes, whether such performance was deficient under the first prong of

the *Strickland* test; (3) if yes, whether the claim meets the second requirement for review under the new Act, i.e., "that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent."

### A.

Let us initially deal with the first prong, whether counsel actually committed the act which gives rise to the allegation of ineffectiveness. Since in virtually all cases, the allegation is that appellate counsel *failed* to present a claim in the direct appeal, the first prong is virtually always going to be met, as that omission will be readily apparent from the record. A requirement which fails to differentiate one case from another is, at best, a requirement with no teeth; at worst, it is no requirement at all.

Since, in virtually every case, a petitioner can easily clear this first hurdle, we are left with the other two prongs: whether such performance was deficient under the first prong of the *Strickland* test; and whether the outcome of the trial would have been different but for the errors or that the defendant is factually innocent. The order takes language from *Strickland* in support of the deficient-performance prong; however, in doing so, it uses the "pick-and-choose" method to find language which supports its position.

### B.

The analysis of ineffective assistance of counsel must begin with the reasons an effective counsel is necessary. That much is clear: "[i]n giving meaning to the requirement [for effective assistance of counsel], however, we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. In

---

**69.** 22 O.S.Supp.1995, § 1089(D)(4)(a)(1), (2) & (3).

**1.** *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

making that assessment, both prongs of the *Strickland* test must be met.[2]

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.... The court must then determine whether, *in light of all the circumstances,* the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, *the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.*

*Id.* at 690, 104 S.Ct. at 2066 (emphasis added). If this were not clear enough, the Court added that "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the *assistance necessary to justify reliance on the outcome of the proceeding.* Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 691–92, 104 S.Ct. at 2067 (emphasis added).

I see no way to read this other than that a petitioner must show not only deficient performance, but also must show prejudice. The premise of *Strickland* is based on a petitioner's showing two requirements. The language describing one is supported by the language describing the other. One cannot separate the two parts and expect either one to function properly alone. The language in 22 O.S.Supp.1995, § 1089(D)(4)(b)(2), i.e. "the performance of appellate counsel constitutes the denial of reasonable, competent assistance of appellate counsel under prevailing professional norms", is in effect a generalized statement of the *Strickland* two-prong test. This language dictates both prongs of the *Strickland* test must be used.

Granted, the order here requires some kind of a "prejudice" prong. Specifically, the

second prong would be met if a petitioner can show "either that the *outcome* of the trial could have been different but for the errors or that the defendant is factually innocent." Order at 9 n. 23. As shown below, the "prejudice" prong in *Strickland* requires more.

## C.

*Strickland* is very specific on the point there must be more than a look at whether the outcome would have been different.

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test [citation], and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. Respondent suggests requiring a showing that the errors "impaired the presentation of the defense." Brief for Respondent 58. That standard, however, provides no workable principle. Since any error, if it is indeed an error, "impairs" the presentation of the defense, the proposed standard is inadequate because it provides no way of deciding what impairments are sufficiently serious to warrant setting aside the outcome of the proceeding.

*Strickland,* 466 U.S. at 693, 104 S.Ct. at 2068.

Granted, in many, if not most, cases, this requirement will be met if a petitioner can show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. But as *Strickland* and other Supreme Court cases stress, this is not a pure outcome-determinative test. Indeed, in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Court declined to grant relief even thought the outcome might have changed because to do so might have "grant[ed] the defendant a windfall to which the law does not entitle him." *Id.* at 370, 113

---

2. The importance of the second prong is discussed below. *See also Lockhart v. Fretwell,* 506 U.S. 364, 368–69, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993) (FN 2 ... "And under *Strickland v. Washington* (cites omitted), an error of constitutional magnitude occurs in the Sixth Amendment context only if the defendant demonstrates (1) deficient performance *and* (2) prejudice.") (emphasis added).

S.Ct. at 843. This is so because "[t]he touchstone of an ineffective assistance claim is the fairness of the adversary proceeding, and 'in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" *Id.* at 370, 113 S.Ct. at 843 (*quoting Nix v. Whiteside,* 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986)).

In short, the "prejudice" prong focuses not on whether the outcome of the trial would have been different, but rather "on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. at 844 (*quoting Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). *See also United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

## II.

My concern about this Court's abandoning *Strickland*'s second prong is more than a rigid adherence to past caselaw. I have shown above that the first of the three requirements enunciated in the Order is really no requirement at all. I have also shown that the "prejudice" prong enunciated in the Order is not as demanding as the "prejudice" test we use on direct appeal. The net result is a test for ineffective assistance of counsel which is actually more lenient for post-conviction than it is for direct appeal. The Order takes great pains at the beginning to "reemphasize the narrow scope of review

available on collateral appeal," *supra* at page 2, and to point out "the legislature's intent to honor and preserve the legal principle of finality of judgment," adding that this Court "will narrowly construe these amendments to effectuate that intent." Order at page 4. If this new test for ineffective assistance of counsel is implemented, these quotes become mere empty platitudes.

In making these statements, I am not necessarily criticizing the way the Order purports to interpret the first prong of the *Strickland* test. It is appropriate to apply the first prong first, for that way there is no need to analyze under the "prejudice" prong the underlying omitted claim which forms the basis for the ineffective assistance of counsel complaint if deficient performance is not proven. The method by which we analyzed ineffective assistance of appellate counsel claims before was indeed frustrating. But to throw out a substantial portion of our previous ineffective assistance of counsel analysis simply because we did not think of applying the first prong first is to throw the baby out with the bathwater. And it will lead to results which are equally frustrating. Post-conviction counsel are creative lawyers. Just as they found a way to force this Court to "analyze" a substantive claim under the guise of ineffective assistance of appellate counsel, so here will they figure out a way to present sufficient evidence in support of their claim to necessitate a remand for an evidentiary hearing and possible relief.[3]

Everyone has a bad day once in awhile. The Legislature certainly had one when they adopted some of the language contained in this statute. This Court has attempted to give reason to the syntax set forth in the statute as that language is strictly construed on its face. But there is no reason to compound one bad day in the Legislature with

---

**3.** As the issue was determined without need for elucidation, the Order does not discuss the standard by which we judge documents submitted in support of the post-conviction relief application. In fairness to litigants before this Court, I set out the method I use to determine whether affidavits or other materials submitted in support of an application meet the required burden of proof for further examination. I believe the appropriate vehicle is 22 O.S.Supp.1996, Ch. 18, App. *Rules of the Court of Criminal Appeals,* Rule 9.7. The documents presented in support of a claim must relate to issues not procedurally barred from review in post-conviction review and show this Court by clear and convincing evidence that the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief. Rule 9.7(D)(5). If we find the documents meet these requirements, we will remand for an evidentiary hearing at which appropriate evidence can be presented.

another bad one in this Court. I fear we are doing exactly that with this interpretation.

Accordingly, I can only concur in result.

LANE, Judge, dissenting:

I disagree with the majority in its decision as to two of the issues raised by the petitioner: the issue of improper instruction that was decided in *Flores v. State,* 896 P.2d 558, 562 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 548, 133 L.Ed.2d 450 (1996), and the issue of the standard of proof needed in a competency hearing as determined by *Cooper v. Oklahoma,* —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). Both of these cases were determined in the time frame between Petitioner filing his direct appeal brief and the filing of this post conviction action.

The majority finds that both of these issues were waived because they were not raised on direct appeal. I believe that the majority has incorrectly interpreted 22 O.S.Supp.1995 § 1089(C)(2) which states that a claim comes under the purview of the capital post conviction act if it involves a claim that "was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state...." The majority does not cite, nor do I find any cases that determined either of these issues prior to the time that Petitioner filed his appellate brief. As to the burden of proof issue, even though it was after Petitioner had filed his brief in chief, we held that the "clear and convincing" standard applied in *Cooper v. State,* 889 P.2d 293 (Okl.Cr.1995). Therefore, it would be very difficult for us to say that the claim could have been reasonably formulated from one of our prior decisions.

If we were to consider the instruction issue, we would reverse and remand for a new trial. If we were to consider the standard of proof issue, we would remand the case to the trial court for a proper competency resolution.

Recently, at oral arguments in death cases we have complemented appellate counsel for cutting down on the number of propositions that they have raised. There has been a trend for them to eliminate propositions that we have repeatedly decided in prior cases. However, most of them have not yet been determined by the U.S. Supreme Court. Today, we are telling counsel that even though we have decided the issue, they should raise adjudicated issues in all future cases in order to prevent waiver in case our opinions are overturned in the federal system.