1999 OK CR 24

**Curtis Edward McCARTY, Petitioner,**

v.

**STATE of Oklahoma, Respondent.**

**No. PC–98–321.**

Court of Criminal Appeals of Oklahoma.

May 17, 1999.

Randy D. Evers, Norman, for Petitioner on appeal.

No Response Necessary From the State.

### OPINION DENYING APPLICATION FOR POST–CONVICTION RELIEF AND EVIDENTIARY HEARING

LUMPKIN, Vice–Presiding Judge:

¶ 1 Petitioner Curtis Edward McCarty was tried and convicted of First Degree Murder in the District Court of Oklahoma County, Case No. CRF–85–2637. He was sentenced to death. He appealed his conviction to this Court in Case No.F–86–343. We reversed and remanded for a new trial, finding the record "replete with error committed during both stages of the trial...." *McCarty v. State*, 1988 OK CR 271, 765 P.2d 1215, 1222.

¶ 2 Petitioner was retried in September of 1989. For a second time, Petitioner was convicted of First Degree Murder and sentenced to death. For a second time, Petitioner appealed. On this occasion, we affirmed Petitioner's murder conviction. *McCarty v. State*, 1995 OK CR 48, 904 P.2d 110 (Lumpkin, J., concurring in part, dissenting in part). However, we reversed Petitioner's death sentence and remanded for a new sentencing stage proceeding because the trial court had refused to instruct the jury on the requested alternative sentencing option of life imprisonment without parole.

¶ 3 Petitioner's resentencing proceeding was held in April of 1996 as a jury trial. For the third time, the jury recommended death. The trial court sentenced Petitioner accordingly. This Court affirmed his sentence in *McCarty v. State*, 1998 OK CR 61, 977 P.2d 1116. Petitioner filed his Original Application for Post–Conviction Relief in this Court on July 31, 1998 in accordance with 22 O.S.Supp. 1995, § 1089.

■■■ ¶ 4 Before considering Petitioner's claims, we must again reiterate the narrow scope of review available under the amended Post–Conviction Procedure Act. As we have said numerous times:

> [t]he Post–Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. *Walker v. State*, 933 P.2d 327, 330 (Okl.Cr.1997) (interpreting Act as amended) *cert. denied*, 521 U.S. 1125, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (1997); *Fox v. State*, 880 P.2d 383, 384 (Okl.Cr.1994), *cert. denied*, 514 U.S. 1005, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995) (same conclusion under Act before amendments). The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Accordingly, claims which could have been raised in previous appeals but were not are generally waived; and claims raised on direct appeal are *res judicata*. *Thomas v. State*, 888 P.2d 522, 525 (Okl.Cr.1994), *cert. denied*, 516 U.S. 840, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995); *Castro v. State*, 814 P.2d 158, 159 (Okl.Cr. 1991), *cert. denied*, 502 U.S. 1063, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992).

*Conover v. State*, 1997 OK CR 39, 942 P.2d 229, 230. These procedural bars still apply under the amended Act. We have noted the new Act makes it even more difficult for capital post-conviction applicants to avoid procedural bars. *Walker*, 933 P.2d at 331. Under 22 O.S.Supp.1995, § 1089(C)(1), only claims which "[w]ere not and could not have been raised" on direct appeal will be considered. A capital post-conviction claim could not have been raised on direct appeal if (1) it is an ineffective assistance of trial or appellate counsel claim which meets the statute's definition of ineffective counsel; or (2) the legal basis of the claim was not recognized or could not have been reasonably formulated from a decision of the United States Supreme Court, a federal appellate court or an appellate court of this State, or is a new rule of constitutional law given retroactive effect by the Supreme Court or an appellate court of this State. 22 O.S.Supp.1995, §§ 1089(D)(4)(b), 1089(D)(9). Should a Petitioner meet this burden, this Court shall consider the claim only if it "[s]upports a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." 12 O.S.Supp.1995, § 1089(C)(2). As we said in *Walker*:

> The amendments to the capital post-conviction review statute reflect the legislature's intent to honor and preserve the legal principle of finality of judgment, and we will narrowly construe these amendments to effectuate that intent. Given the newly refined and limited review afforded capital post-conviction applicants, we must also emphasize the importance of direct appeal a the mechanism for raising all potentially meritorious claims. Because the direct appeal provides appellants their only opportunity to have this Court fully review all claims of error which might arguably warrant relief, we urge them to raise all such claims at that juncture.

*Walker*, 933 P.2d at 331 (footnote omitted, emphasis in original). We now turn to Petitioner's claims.

■■■ ¶ 5 In proposition one, Petitioner contends the "pervasive past practices of the prosecution in misleading juries as to the

reliability of informants and willfully misleading juries in general, coupled with the actual unreliability of the informants used against Mr. McCarty, serve to make both the guilt and sentencing stage of Mr. McCarty's trials unreliable, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." More specifically, he points to the criminal record of informant Theodore John Edgin, Jr.,[1] involving numerous crimes of dishonesty, and the trial practices of Oklahoma County District Attorney Robert H. Macy. Petitioner cites numerous opinions from this Court and federal courts wherein Mr. Macy's trial practices have been discussed, criticized, or condemned.[2] Petitioner claims Mr. Edgin's documented criminal history and Mr. Macy's criminal trial history, as chronicled in published appellate opinions, combined to make his trial and conviction constitutionally unreliable. He claims this argument is analogous to this Court's current jurisprudence regarding the "continuing threat" aggravator. He also claims his appellate counsel was ineffective for failing to raise this issue.

¶ 6 In *Walker*, this Court set forth a three-prong test to review claims of ineffective assistance of appellate counsel.[3] Under this analysis, the threshold inquiry is whether appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. If a petitioner establishes appellate counsel actually did the thing supporting the allegation of ineffectiveness, this Court then determines whether the performance was deficient under the first prong of the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 677–78, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984). If this burden is met, this Court then considers the mishandled substantive claim, asking whether the deficient performance supports a conclusion "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." *Walker*, 933 P.2d at 333, n. 25, quoting 22 O.S.Supp. 1995, § 1089(C)(2).

¶ 7 Under this analysis, Petitioner's first proposition of error fails, as the record does not show appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. Indeed, appellate counsel in both the direct appeal of Petitioner's trial and Petitioner's resentencing proceeding did in fact raise the same issue several times, albeit in slightly different contexts. In attacking the sufficiency of the evidence, Petitioner's appellate counsel, Jamie D. Pybas, argued:

> The testimony of Theodore John Edgin, Jr. also did not rise to the level of credible evidence of Mr. McCarty's involvement in the crime. Edgin, a convicted felon, claimed he never made any agreement with the Oklahoma County District Attorney's Office and had merely volunteered to testify.... He did admit the pending felony charges against him in Oklahoma County were dismissed following the tri-

1. Edgin testified in both stages of Petitioner's trial.

2. Appellant cites to the following cases involving Mr. Macy: *Cantrell v. State*, 1985 OK CR 35, 697 P.2d 968; *Bechtel v. State*, 1987 OK CR 126, 738 P.2d 559; *McCarty v. State*, 1988 OK CR 271, 765 P.2d 1215; *Paxton v. State*, 1993 OK CR 59, 867 P.2d 1309; *Bryson v. State*, 1994 OK CR 32, 876 P.2d 240; *Howell v. State*, 1994 OK CR 62, 882 P.2d 1086; *Hooker v. State*, 1994 OK CR75, 887 P.2d 1351; *Hawkins v. State*, 1994 OK CR 83, 891 P.2d 586; *Duckett v. State*, 1995 OK CR 61, 919 P.2d 7; *Le v. State*, 1997 OK CR 55, 947 P.2d 535; *Torres v. State*, 1998 OK CR 40, 962 P.2d 3; *Ochoa v. State*, 1998 OK CR 41, 963 P.2d 583; *Paxton v. Ward*, CIV–96–1042–A (W.D.Okl. March 2, 1998).

3. I continue to maintain that the *Strickland* test in its entirety, i.e.,both prongs of the test, is the appropriate vehicle with which to review claims of ineffective assistance of appellate counsel. *See Walker*, 933 P.2d at 341. However, I yield to the majority here based on stare decisis. Having reviewed Petitioner's application, together with the argument and authority provided, in accordance with the criteria set forth in *Braun v. State*, 1997 OK CR 26, 937 P.2d 505, 511–514, *cert. denied*, 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 559 (1997), I find counsel's performance was not deficient and the underlying substantive claim is procedurally barred. In addition, it should be noted the criteria set forth in *Strickland* for evaluating effectiveness of counsel has been further explained in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Applying the *Lockhart* standard, the record is void of any evidence the trial was rendered unfair and the verdict rendered suspect or unreliable.

al.... There is an obvious inherent unreliability in the testimony of witnesses like Edgin. (appellate brief in F–89–1057, Appellant's second direct appeal, at page 33). Moreover, Petitioner's entire third proposition in his second direct appeal dealt thoroughly with the issue of alleged prosecutorial misconduct by Mr. Macy and his co-counsel. In proposition III.A., Ms. Pybas discussed the prosecutors' "dogged defiance of the ruling of this court in *McCarty v. State*" and "deliberate tactics to confuse and mislead the jury." In proposition III.C., Ms. Pybas accused the prosecutor of making "an almost identical argument to one which was condemned by this Court in *McCarty v. State*, 765 P.2d at 1120." Similar arguments appear in proposition III.F. and III.H.

¶ 8   In the appeal from Petitioner's resentencing proceeding, appellate counsel Matthew D. Haire also attacked Mr. Edgin and Mr. Macy. In Proposition IV of his appellate brief, Mr. Haire claimed Petitioner's rights under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution were violated with the use of inadmissible evidence. Part of that inadmissible evidence, he contended, was the State's use of Theodore Edgin's testimony. Mr. Haire referred to Edgin as a "convicted felon" and "jailhouse snitch," who had a "criminal history composed of crimes involving dishonesty and deceit." Mr. Haire also alleged Edgin had been rewarded for his testimony by the district attorney. Edgin was also discussed in other parts of the brief, including Proposition XV. Concerning Mr. Macy, Haire lodged an aggressive attack on the alleged "misconduct" of Mr. Macy throughout his appellate brief, but most pointedly in Propositions I.B., IV, and XIII.

■ ¶ 9   We recognize there is a slight variance in the way this issue was raised in Petitioner's post-conviction application, i.e. by comparing the use of Edgin's testimony and Macy's trial practices to the way this Court applies the "continuing threat" aggravating circumstance. However, to the extent the argument on post-conviction differs from that on direct appeal, the claim is waived as it could have been raised but was not. The doctrine of res judicata does not allow the subdividing of an issue as a vehicle to relitigate it at a different stage of the appellate process. *Gilbert v. State*, 1998 OK CR 17, 955 P.2d 727, 732. Simply envisioning a new method of presenting an argument previously raised does not avoid the procedural bar. *Id.* Moreover, to the extent that this is a novel issue, we cannot say Petitioner's appellate counsel were ineffective for failing to raise it. While appellate counsel has a duty to raise relevant issues for this Court's consideration, there is no obligation to raise all available non-frivolous issues. *Walker*, 933 P.2d at 334. Petitioner's appellate counsel filed well written, thoroughly researched briefs raising numerous claims, including several challenges to the death sentence, at least equally and most likely more meritorious than the claim which was omitted and is at issue here. Mere failure to raise a claim will not constitute deficient performance.

¶ 10   Therefore, to the extent this issue is not res judicata, Petitioner has failed to show appellate counsels' omissions, if any, were unreasonable under prevailing professional norms. As Petitioner has not established appellate counsels' performances were deficient, his claim of ineffective assistance of appellate counsel in proposition one is denied.

¶ 11   In proposition two, Petitioner contends his trial counsel and appeal counsel provided ineffective assistance by failing to investigate a set of keys that were found in the yard of the house where the murder was committed and by failing to investigate the "mysterious loss" of a window pane which allegedly exhibited fingerprints.

■ ¶ 12   We begin with a review of the actions of Petitioner's trial counsel. The only reason a claim of ineffective assistance of trial counsel cannot be raised on direct appeal is if it "requires factfinding outside the direct appeal record." 22 O.S.Supp.1995, § 1089(D)(4)(b)(1); see also *Walker*, 933 P.2d at 332. The statutory phrase "factfinding outside the direct appeal record" was never meant to negate the principal of waiver. *McGregor v. State*, 1997 OK CR 10, 935 P.2d 332, 335, *cert. denied*, 521 U.S. 1108, 117 S.Ct. 2489, 138 L.Ed.2d 996 (1997). "Stated

in prohibitive terms, this Court may not review [Petitioner's] post-conviction claims of ineffective assistance of trial counsel if the facts generating those claims were available to [Petitioner's] direct appeal attorney and thus either were or could have been used in his direct appeal." *Walker*, 933 P.2d at 332. The category of items requiring fact-finding outside the direct appeal record does not include those items that trial counsel had the ability to discover. *McGregor*, 935 P.2d at 335. We have made it clear that the mere absence of claims from the direct appeal record is not sufficient; the claim would still be waived if the facts generating those claims were available to Petitioner's direct appeal attorney and thus were or could have been used in his direct appeal.

¶ 13 With respect to the "missing" window pane, the facts generating Petitioner's ineffective assistance of trial counsel claims were available and known to Petitioner's direct appeal counsel, and Petitioner's trial counsel had the ability to discover them. Indeed, in his 1989 re-trial, Petitioner's counsel cross-examined several state's witnesses concerning the window.

¶ 14 With respect to the keys, Petitioner has failed to sufficiently demonstrate his trial counsel did not have the ability to discover their existence and then conduct an investigation for their use at trial. Petitioner mentions a police report but does not include a copy of the report in his appendices, nor does he make any reference to the record where we can find such report. He does include an affidavit from Karen Billings, an investigator who worked on Petitioner's trials, but that affidavit only alleges this particular investigator does not recall seeing the police report. We are not told whether she was the sole investigator, and the affidavit admits that she does not know if the report was given to the Oklahoma Indigent Defense System during Petitioner's trial or a some other time. However, a February 14, 1986 letter from the district attorney's office to defense counsel indicates all police reports had been produced (O.R. at 204). Thus, Petitioner's conclusion that a "bare mention of the key at trial would have produced reasonable doubt in the minds of the jurors" is wholly speculative and requires a leap of faith which this Court simply will not take.

¶ 15 With respect to the alleged ineffective assistance of Petitioner's appellate counsel for failing to raise a claim of error by trial counsel in relation to the keys and missing window, our threshold inquiry under *Walker* is whether appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. Here, appellate counsel, i.e. counsel with respect to Petitioner's 1989 re-trial, did not raise this issue on appeal. Therefore, we must ask whether appellate counsel's performance was deficient under the first prong of the *Strickland* test, i.e. whether "counsel's performance was deficient under prevailing professional norms." *Walker*, 933 P.2d at 333.

¶ 16 We cannot say the performance by Petitioner's appellate counsel was deficient under prevailing professional norms for failing to assert on appeal that trial counsel was ineffective for failing to further investigate the keys or the missing window. Again, Petitioner has provided nothing to this Court with respect to the keys but allegations and possibilities. We have nothing to review but Petitioner's own speculation regarding the keys, and therefore we cannot say Petitioner's appellate counsel provided ineffective assistance with respect to this issue. Considering the record before us, it is just as likely that the keys were fully investigated and eliminated as crucial evidence as it is to say they are the missing link to the chain of Petitioner's proclaimed innocence. Moreover, the record reflects trial counsel fully cross-examined Officers Horn, Goforth, and Beaucourt regarding the window pane. Officer Goforth testified about the procedures he performed on the window pane and his inability to retrieve any identifiable fingerprint therefrom. Trial counsel filed numerous discovery requests concerning the production of exculpatory evidence. In light of the discovery requests and the sworn testimony of the officers, we cannot say appellate counsel was ineffective for failing to allege error by trial counsel in investigating this matter further. Proposition Two is denied.

¶ 17 In his third proposition, Petitioner challenges the constitutionality of this Court's interpretation of the capital post-conviction statute, 22 O.S.1996, § 1089. He argues our interpretation of this statute has abridged Petitioner's right of access to the courts, permitted legislative interference with the judicial power, and denied Petitioner due process of law as guaranteed by our state and federal constitutions. This court has previously rejected such arguments, and we do so again here. *See Le v. State,* 1998 OK CR 1, 953 P.2d 52, 54–55, *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998).

¶ 18 In his fourth proposition, Petitioner claims the jury findings of the aggravating circumstances of "previous conviction of a felony involving the use or threat of violence to the person" and "continuing threat" violated the Eighth and Fourteenth Amendments to the U.S. Constitution because the aggravators were duplicative and cumulative. This issue was addressed by Petitioner's appellate counsel in his resentencing appeal and is therefore res judicata. To the extent it was not raised in the same manner, the issue is waived as it could have been raised in the resentencing appeal.

¶ 19 In his fifth proposition, Petitioner claims the State's failure to produce allegedly "exculpatory" evidence, i.e. the identity of the owner of the keys and the fingerprints on the missing window pane, denied him a fair trial, and his appellate counsels' failure to raise this issue amounted to ineffective assistance. He also claims he is deserving of discovery on this issue. Petitioner also filed a Motion for Evidentiary Hearing and Discovery relating to keys and window contemporaneously with his post-conviction application.

¶ 20 We have thoroughly discussed our findings regarding the keys and the missing window pane. Based upon the record before us, we cannot say trial or appellate counsel were ineffective in regard to these issues. Proposition five is denied.

¶ 21 Finally, we turn to Petitioner's motion of evidentiary hearing and discovery with respect to the issues raised in his application. Specifically, Petitioner requests an evidentiary hearing and discovery on the issues relating to the keys and missing window pane. This request is denied.

¶ 22 A post-conviction applicant is not entitled to an evidentiary hearing unless "the application for hearing and affidavits ... contains sufficient information to show this Court by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." Rule 9.7(D)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (1997). Rule 9.7 requires affidavits in order to rebut the presumption of regularity at trial and the presumption that the prosecutors, as officers of the court, adhered to their constitutional duty to turn over exculpatory evidence. Petitioner has failed the make this clear and convincing showing or to overcome the presumption of regularity. He has shown us two pieces of evidence which may have been relevant to his case, but beyond that his allegations are nothing more than unsupported possibilities. While the window may indeed be missing, the testimony at trial was that the four extremely dirty and greasy fingerprints located thereon did not have enough detail to make an identification, despite the fact that the police used iodine fuming, ninhydrin spray, and latent fingerprint powder for further enhancement. Moreover, the affidavits from Ms. Pybas and Ms. Billing, which address only the keys, do not establish by clear and convincing evidence that the keys have any particular relevance to Petitioner's trial.

¶ 23 The application for evidentiary hearing in this case is fatally defective for the same reasons we have continually found such applications filed pursuant to Rule 3.11 to be defective. The application does not contain statements of fact regarding evidence which has been discovered and needs to be made a part of the record on appeal. Instead, it only contains speculation on what might be able to be discovered if given the opportunity. That is not the scope and purpose of an application for evidentiary hearing under our rules. According to Rule 9.7(D)(5), Petitioner must show by "clear and convincing evidence the

materials [which have already been discovered and are documented in the affidavits presented in support of the application and are] sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." Both Rule 3.11 and Rule 9.7 are viable rules this Court will utilize to supplement the record when the proper foundation has been laid to support the application. However, the requirements of the rules are not met when an application merely speculates on what might be discovered at a later date if the Petitioner is given additional opportunity for discovery.

¶ 24 As for Petitioner's discovery requests, this Court has never allowed unfettered discovery in post-conviction proceedings, and the new Act does not broaden discovery rights. *Walker*, 933 P.2d at 340. Petitioner has failed to show this Court why additional discovery relating to the keys or window is necessary and, as stated above, has failed to overcome the presumption of regularity. The victim in this case was murdered in 1982. Petitioner's trial was held in 1985. He has had approximately thirteen (13) years to investigate the keys and missing window. He has failed to present us with additional facts which bring into question the validity of the judgment and sentence in this case. Accordingly, his request for discovery is hereby denied.

### DECISION

¶ 25 After carefully reviewing Petitioner's Application for post-conviction relief and motion for evidentiary hearing and discovery, we conclude: (1) there exist no controverted, previously unresolved factual issues material to the legality of Petitioner's confinement; (2) Petitioner could have previously raised collaterally asserted grounds for review; (3) grounds for review which are properly presented have no merit or are barred by res judicata; and (4) the post-conviction statutes warrant no relief. Accordingly, Petitioner's Application for Post–Conviction Relief and Motion for Evidentiary Hearing and Discovery are DENIED.

JOHNSON and LILE, JJ., concur.

STRUBHAR, P.J., and CHAPEL, J., concur in Results.

