1999 OK CR 47

**Gilberto MARTINEZ, Petitioner.**

v.

**The STATE of Oklahoma, Respondent.**

**No. PC–98–739.**

Court of Criminal Appeals of Oklahoma.

Nov. 24, 1999.

---

1. *Burks v. State,* 594 P.2d 771.

Wyndi Thomas Hobbs, Oklahoma Indigent Defense System, Capital Post–Conviction, for Petitioner on Appeal.

No Response Necessary from the State.

## OPINION DENYING APPLICATION FOR POST–CONVICTION RELIEF AND EVIDENTIARY HEARING

LUMPKIN, Vice–Presiding Judge:

¶1 · Petitioner Gilberto Martinez was convicted of two counts of First Degree Murder in the District Court of Tillman County, Case No. CRF–87–48, and was sentenced to death. Petitioner appealed his conviction to this Court in Case No. F–88–241. We reversed and remanded for a new trial, finding Petitioner had been denied the right of confrontation and had not received an instruction on the sentencing option of life without parole. *Martinez v. State*, 1995 OK CR 52, 904 P.2d 138.

¶2 Petitioner was retried in April of 1997. For a second time, Petitioner was convicted of two counts of First Degree Mur-

der and sentenced to death. Petitioner appealed. On this occasion, we affirmed Petitioner's conviction and sentence. *Martinez v. State*, 1999 OK CR 33, 984 P.2d 813. Petitioner then filed his Application for Post–Conviction Relief in this Court on June 21, 1999 in accordance with 22 O.S.Supp.1999, § 1089. Accompanying that application is Petitioner's motion for evidentiary hearing and Petitioner's "Appendices to Application for Post–Conviction Relief," filed pursuant to Rule 9.7(D), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (1999).

¶ 3 On numerous occasions, this Court has set forth the narrow scope of review available under the amended Post–Conviction Procedure Act. See e.g., *Patton v. State*, 1999 OK CR 25, ¶ 2, 989 P.2d 983; *McCarty v. State*, 1999 OK CR 24, ¶ 4, 989 P.2d 990. We will apply that same scope of review here in our examination of the ten propositions set forth in Petitioner's post-conviction application.

¶ 4 In proposition one, Petitioner contends his due process rights were violated when the trial judge recited a prayer at the beginning of trial. A similar error was raised in Petitioner's direct appeal. There, Petitioner claimed his trial counsel was ineffective for failing to object to the prayer of the trial judge. *Martinez*, 1999 OK CR 33, ¶ 51, 984 P.2d at 827. In disposing of that claim, we found Petitioner and his counsel had both made an informed decision not to object to the prayer.[1] Furthermore, while recognizing this practice has a potential for error, we found Petitioner had not shown a deficient performance by his counsel or any prejudice he suffered as a result thereof. *Id.* at ¶ 54, 984 P.2d at 827. Therefore, we found

no ineffective assistance of counsel and no plain error requiring a new trial.

¶ 5 Similarly, we cannot find Petitioner was denied due process by use of process which both he and his counsel approved. This claim is now res judicata because it was previously raised in Petitioner's direct appeal. *McCarty*, 1999 OK CR 24, ¶ 4, 989 P.2d 990. To the extent this issue has been raised differently here, it has been waived because the issue could have been raised as a due process claim in Petitioner's direct appeal. *Id.*

¶ 6 In his second proposition, Petitioner claims his death sentence should be vacated because the execution of mentally retarded individuals constitutes cruel and unusual punishment. Along this line, Petitioner, a Cuban national, has provided a letter/affidavit from James P. Choca, Ph.D., a clinical psychologist who was born in Havana Cuba.[2] Dr. Choca examined Petitioner on June 14, 1999 with the intent of testing Petitioner's intellectual abilities. He administered the Wechsler and Spanish version of the Peabody Picture Vocabulary tests to Petitioner. Dr. Choca also documented Petitioner's legal, psychiatric, medical, social, educational, and occupational histories.

¶ 7 Dr. Choca concluded Petitioner has an intelligence quotient of 63 to 64.[3] According to Dr. Choca, this score places Appellant in the mentally defective range and in the lowest one percent of the American standardizing population. He characterized Petitioner as "mildly mentally retarded" on the DSM–IV, the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association.

¶ 8 Similar evidence was admitted during Petitioner's trial. Dr. Ray Hand, a licensed

---

1. Petitioner indicated he is a "believer," stating, "The prayer is fine with me."

2. Dr. Choca is a professor and the Director of Doctoral Studies in the School of Psychology at Roosevelt University in Chicago. He is also an Associate Professor in the Psychology Division of Northwestern University Medical School's Department of Psychiatry and Behavioral Sciences. His professional vitae reflects numerous published writings in the area of psychology and psychological testing.

3. We note here that Petitioner has apparently suffered serious brain complications in recent years. Dr. Choca notes Petitioner had three brain aneurysms in 1997 and had brain surgery in 1997 and 1998. We are not told if these surgeries and aneurysms affected Petitioner's intellectual functioning at the time he was tested by Dr. Choca in 1999.

psychologist, testified regarding his interviews and testing of Petitioner. Using a translator and adapted forms of common I.Q. tests, including three subtests of the Wechsler Adult Intelligence Scale, Revised, Dr. Hand estimated Petitioner's intellectual functioning as "borderline to low-average range." Dr. Hand estimated Petitioner was in the lower twenty percent, or maybe even a bit lower. He did not reach a conclusion whether or not Petitioner was "retarded," but he did find Petitioner functioned well below average. Along this line, the jury in Petitioner's trial was instructed to consider Appellant's "borderline to low intelligence" as a mitigating circumstance.

¶ 9 As reflected above, the issue presented in proposition two has been waived. Petitioner could have raised this issue, i.e. the execution of mentally retarded individuals constitutes cruel and unusual punishment, on direct appeal but did not. 22 O.S.Supp.1995, § 1089(C); *McCarty*, 1999 OK CR 24, ¶ 4, 989 P.2d 990; see also, *Lambert v. State*, 1999 OK CR 17, ¶ 59, 984 P.2d 221, 238 (where the Court declined relief on this same issue in a direct appeal, in light of *Penry v. Lynaugh*.[4])

¶ 10 In proposition three, Petitioner claims political and social conditions in Cuba and the state of political affairs between the United States and Cuba prevent the development of substantial mitigating evidence concerning Petitioner. He claims these external factors prevent a full and fair development of evidence necessary to ensure the death penalty is not being imposed in an arbitrary and capricious manner. He asks this Court to modify his sentence to life imprisonment or life imprisonment without the possibility of parole.

¶ 11 To support this proposition, Petitioner's post-conviction counsel traveled to Cuba and interviewed members of Petitioner's family. Petitioner's counsel spoke with and obtained affidavits[5] from Petitioner's father, step-mother, half-sister, former girlfriend, daughter, and others. Some of the information set forth in their affidavits include: Petitioner' family was poor after the Cuban revolution; his mother committed suicide when he was less than six; Petitioner contracted tetanus as a young boy and was very ill; Petitioner had physical and behavioral changes following this illness; Petitioner tried to set himself on fire when he was about eleven by rubbing kerosene over his body, a common method of suicide in Cuba; Petitioner is loved by his family; Petitioner used to curl up in a fetal position from the age of seven; and Petitioner was not violent to his family.

¶ 12 While we agree some of this mitigating evidence might have been useful to Petitioner during his trial,[6] this issue could have been raised in Petitioner's direct appeal but was not. It is thus waived. See *Al–Mosawi v. State*, 1998 OK CR 18, ¶ 2 & n. 5, 956 P.2d 906, 908 & n. 5 (finding a similar issue, raised in relation to diplomatic relations between the United States and Iran, had been waived).[7]

¶ 13 In his fourth proposition of error, Petitioner claims his appellate defense counsel was ineffective because he supposedly failed to meet with Petitioner or speak with him on the phone. He claims this resulted in the failure of appellate counsel to discover any mitigating evidence, specifically Petitioner's mental condition.[8] To support these statements, Petitioner attaches an Oklahoma Indigent Defense System Post Capital Divi-

4. 492 U.S. 302, 109 S.Ct. 2934, 2954, 106 L.Ed.2d 256 (1989).

5. The affidavits are not part of the record on appeal. They are reviewed in order to determine if sufficient to show this Court by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised the Petitioner's application for post-conviction relief. Rule 9.7(D)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (1999).

6. Some of this evidence was not new. For example, as herein after explained, the suicide of Petitioner's mother and his family's poverty following the Cuban revolution were brought out during the trial.

7. We also note Dr. Hand testified regarding the conditions in Cuba and Petitioner's difficulties related thereto.

8. See proposition two.

sion investigator's affidavit, stating appellate counsel told her: he had not met Petitioner in person; he does not speak Spanish; he spoke with Petitioner on the telephone by using Petitioner's cell partner as an intermediary; and he had no way to go to Cuba. Petitioner raises a similar claim in proposition five. We will therefore consider propositions four and five together.

¶ 14   In proposition five, Petitioner claims his trial and appellate counsel rendered ineffective assistance in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Sections 6, 7, 9, and 20 of Oklahoma's Constitution. Specifically, Petitioner claims his trial and appellate counsel were both aware Mr. Martinez is from Santiago de Cuba, Cuba and that his family still resides there, but they failed to conduct the mitigation investigation that other capital clients receive. Petitioner claims his trial and appellate counsel focused on the seven years Petitioner spent in the United States prior to his arrest and his good conduct while incarcerated in Oklahoma, rather than his life from childhood through adulthood.

■ ¶ 15   To support these allegations, Petitioner lists numerous areas of mitigation relating to his life in Cuba which trial and appellate counsel supposedly "failed to investigate" or present "extensive evidence." These areas of mitigation, supported by affidavit, include: Petitioner experienced extreme poverty and deprivation; Petitioner was a hard, conscientious worker; Petitioner loved his family and they love him; Petitioner cared for children and treated them well; Petitioner was not violent; Petitioner is mentally retarded; Petitioner's mother committed suicide; Petitioner grew up in a hostile and violent time; Petitioner had a severe case of tetanus as a child; Petitioner had difficulty with school and did not receive a full education; and Petitioner suffered through cultural adjustments when he came to America.

■ ¶ 16   We begin our analysis with the allegations relating to Petitioner's trial counsel. Ineffective assistance of trial counsel claims are properly raised and may be considered on post-conviction only if they are based upon facts which were not available to the applicant's direct appeal attorney and thus could not have been made part of the direct appeal record. *Walker v. State*, 1997 OK CR 3, ¶ 7, 933 P.2d 327, 332. "Stated in prohibitive terms, this Court may not review [Petitioner's] post-conviction claims of ineffective assistance of trial counsel if the facts generating those claims were available to [Petitioner's] direct appeal attorney and thus either were or could have been used in his direct appeal." *Id.*; see also 22 O.S.Supp. 1995, § 1089(D)(4)(b)(1).

¶ 17   Here, the facts generating Petitioner's ineffective assistance of counsel claims were known by Petitioner's direct appeal attorney and could have been used in his direct appeal. A simple reading of the transcripts from Petitioner's trial would have shown how trial counsel focused more on Petitioner's life in the United States, rather than his life in Cuba. In fact, Petitioner's trial counsel apparently made a strategic decision to steer away from Petitioner's life in Cuba to a certain degree. In response to Dr. Hand's testimony regarding Petitioner's life in Cuba, the State wanted to introduce statements Petitioner allegedly made that he had killed someone in Cuba.[9] Therefore, Petitioner's trial counsel had to be very careful when addressing character evidence relating to Petitioner's life in Cuba.

¶ 18   Furthermore, many of the areas of mitigation addressed by Petitioner were actually brought out during his trial. Dr. Hand testified about prejudice and cultural problems experienced by Cuban refugees in the United States;[10] Petitioner's borderline to low intelligence;[11] Petitioner's limited education;[12] how refugees were "screened" by the U.S. to ensure they did not have a history of violent crimes;[13] how refugees had very

9.   Tr. XII at 2097.

10.   Tr. XII at 2210–11, 2216–19, 2222.

11.   Tr. XII at 2213–14.

12.   Tr. XII at 2215.

13.   Tr. XII at 2217, 2230.

little in the way of resources;[14] and how a business owned by Petitioner's father in Cuba had been taken away by the Cuban government.[15] As the second stage was preparing to begin, Petitioner's trial counsel indicated knowledge regarding violence Petitioner had witnessed in Cuba, Petitioner's mother throwing herself under a bus when Petitioner was three, and his lack of education.[16] During second stage opening statements, Petitioner's counsel told the jury how Petitioner had grown up in "very poor conditions" in Cuba.[17] A jury instruction on mitigating circumstances told Petitioner's jury to consider: Petitioner has endured extreme poverty and deprivation in his life; Petitioner endured a refugee experience which was detrimental to mental health and made functioning in a strange world difficult; and when evaluated as a person, Petitioner has value to other persons.

¶ 19 We find the facts generating Petitioner's claims of ineffective assistance of counsel were available to Petitioner's direct appeal attorney and could have been used in his direct appeal. Thus, Petitioners claim of ineffective assistance of trial counsel cannot be considered by this Court. *Walker*, 1997 OK CR 3, ¶ 8, 933 P.2d at 332.

■ ¶ 20 Regarding the alleged ineffective assistance of Petitioner's appellate counsel, this Court uses the three-prong test set forth in *Walker*.[18] Under this test, the threshold inquiry is whether appellate counsel actually committed the act which gave rise to the ineffective assistance allegation. If petitioner establishes appellate counsel actually committed the act supporting the allegation of ineffectiveness, this Court then determines whether the performance was deficient under the first prong of the two-pronged test in *Strickland v. Washington*, 466 U.S. 668,

687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). If this burden is met, this Court then considers the mishandled substantive claim, asking whether the deficient performance supports a conclusion "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." *Walker*, 1997 OK CR 3, ¶ 11 & n. 25, 933 P.2d at 333 & n. 25, quoting 22 O.S.Supp.1995, § 1089(C)(2).

¶ 21 Using this analysis, Petitioner's fourth and fifth propositions of error fail. With respect to the matters alleged in proposition four, Petitioner has not shown his appellate counsel failed to meet with him in person or speak with him on the phone. The affidavit from Lisa G. Cooper is hearsay regarding a conversation she had with Petitioner's appellate counsel. Even if the matters asserted therein are accepted for their truth, the affidavit does not say Petitioner's appellate counsel never spoke with Petitioner on the phone. In fact, the affidavit indicates appellate counsel spoke "at length" with Petitioner through an intermediary. The bare allegation in Petitioner's post-conviction application that the intermediary, Mr. Snow, does not speak Spanish, is unsupported. Thus, the affidavit does not establish by clear and convincing evidence that the materials sought to be introduced have or are likely to have support in law and fact to be relevant to Petitioner's claims of ineffective assistance of appellate counsel. Rule 9.7(D)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (1999). That being so, the ineffective assistance of appellate counsel raised in proposition four must fail.

■ ¶ 22 Concerning the allegations raised in proposition five, appellate counsel's failure to conduct his own investigation into

14. Tr. XII at 2217, 2219.

15. Tr. XII at 2220.

16. Tr. XII at 2100.

17. Tr. XII at 2116.

18. 1997 OK CR 3, ¶ 11, 933 P.2d at 333. I continue to maintain the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), i.e., both prongs of the test, is the appropriate vehicle with which to

review claims of ineffective assistance of appellate counsel. See *Walker*, 1997 OK CR 3, ¶ 6, 933 P.2d at 341–42 (J. Lumpkin, concurring). However, I yield to the majority here based on stare decisis. I also note Strickland's test for evaluating effectiveness of counsel has been further explained in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Under *Lockhart*, we ask whether counsel's alleged ineffectiveness rendered the trial unfair or the verdict suspect or unreliable.

mitigating circumstances relating to Petitioner's life in Cuba were not defective upon the record before us. As shown above, many of the areas of mitigation were brought out during the trial. Other areas were avoided as a matter of trial strategy. While Petitioner's post-conviction counsel expanded on some of the areas of mitigation and even discovered information relating to a serious illness Petitioner experienced as a child and the continuing love his Cuban relatives have for him, we cannot say appellate counsel's performance was deficient for not discovering this information. While appellate counsel has a duty to raise relevant issues for this Court's consideration, there is no obligation to raise all available non-frivolous issues. *Walker*, 1997 OK CR 3, ¶ 14, 933 P.2d at 334. As Petitioner has not established his appellate counsel's performance was deficient, his claim of ineffective assistance of appellate counsel in proposition five is denied.

¶ 23  In his sixth proposition, Petitioner claims this Court has interpreted the post-conviction procedure act in an unconstitutional manner. He contends the *Walker* decision is unconstitutionally vague and has deprived Petitioner of access to the courts, undermined *Strickland*, and violated the concepts of Federalism and separation of powers. He admits this Court has "consistently rejected" such constitutional attacks on the current capital post-conviction procedure. See e.g. *Slaughter v. State*, 1998 OK CR 63, ¶ 11, 969 P.2d 990, 994–95; *Le v. State*, 1998 OK CR 1, ¶ 3–6, 953 P.2d 52, 54–55, cert. denied, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). We do so again here.

■ ¶ 24  In proposition seven, Petitioner claims his appellate counsel's failure to challenge Oklahoma's current clemency scheme constitutes ineffective assistance of counsel. He maintains minimum due process applies to State clemency proceedings but claims "[t]he present Governor of Oklahoma has clearly indicated ... clemency will be arbitrarily denied to any condemned prisoner as [sic] he is in office." Petitioner thus claims his future clemency proceedings will be nothing more than a "meaningless ritual" because his fate has already been prejudged. Petitioner claims this issue should have been raised by his direct appeal counsel and that such counsel was ineffective for having failed to raise it.

¶ 25  While Petitioner's appellate counsel did not raise this claim on direct appeal, we cannot say appellate counsel's performance was deficient in regard to this omission. Petitioner's allegations against the Governor derive from two newspaper articles which supposedly appeared in the Daily Oklahoma in 1995 and 1996. The articles, while hearsay, do not go nearly so far as Petitioner contends. While the articles tend to support the argument that Governor Keating has taken a strict position in regard to his role in the clemency process, they also indicate the Governor does not appoint persons to the Pardon and Parole Board to "just do what he wants." Moreover, assuming arguendo that the articles are accurate, Governor Keating would reportedly be receptive to "new evidence."

¶ 26  Because Petitioner's underlying argument is not sufficiently supported by evidence presented in his appendices, we cannot say the performance by Petitioner's appellate counsel was deficient under prevailing professional norms for failing to raise this issue. Moreover, the issue was premature during Petitioner's direct appeal as clemency proceedings had yet to commence. This proposition is without merit.

¶ 27  In proposition eight, Petitioner urges this Court to adopt the American Bar Association's recommendation to impose a moratorium on this and all executions in the State of Oklahoma. This issue has been repeatedly rejected by this Court, and we find no reason to hold otherwise here. See *Patton v. State*, 1998 OK CR 66, ¶ 115, 973 P.2d 270, 300.

¶ 28  In his ninth proposition of error, Petitioner claims the death penalty constitutes cruel and/or unusual punishment. Again, this issue could have been raised on direct appeal but was not. It is now waived and barred from review. *Cummings v. State*, 1998 OK CR 60, ¶ 17, 970 P.2d 188, 192.

¶ 29  In his last proposition, Petitioner claims the cumulative impact of errors in Petitioner's direct appeal and post-conviction proceedings rendered the death sentence ar-

bitrary, capricious, and unreliable. He claims his death sentence constitutes cruel and unusual punishment and thus requests this Court to modify his sentence to life imprisonment or life imprisonment without the possibility of parole. Having found no errors in this post-conviction proceeding, this proposition is denied.

¶ 30 Finally, we turn to Petitioner's motion for evidentiary hearing and discovery with respect to the issues raised in his application. A post-conviction applicant is not entitled to an evidentiary hearing unless "the application for hearing and affidavits ... contain[s] sufficient information to show this Court by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." Rule 9.7(D)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (1999). Rule 9.7 requires the filing of affidavits in order to rebut the presumption of regularity at trial and the presumption that the prosecutors, as officers of the court, adhered to their constitutional duty to turn over exculpatory evidence. As we have previously set forth in our analysis of the affidavits supporting the motion for evidentiary hearing, Petitioner has failed to make this clear and convincing showing or to overcome the presumption of regularity.

¶ 31 As for Petitioner's discovery requests, this Court has never allowed unfettered discovery in post-conviction proceedings, and the new Act does not broaden discovery rights. *Walker,* 1997 OK CR 3, ¶ 43, 933 P.2d at 340. Petitioner has failed to show this Court why additional discovery is necessary and has failed to overcome the presumption of regularity. Accordingly, his request for discovery is hereby denied.

### DECISION

¶ 32 After carefully reviewing Petitioner's application for post-conviction relief and motion for evidentiary hearing and discovery, we conclude: (1) there exist no controverted, previously unresolved factual issues material to the legality of Petitioner's confinement; (2) Petitioner could have previously raised collaterally asserted grounds for review; (3) grounds for review which are properly presented have no merit or are barred by res judicata; and (4) the post-conviction statutes warrant no relief. Accordingly, Petitioner's Application for Post–Conviction Relief and Motion for Evidentiary Hearing and Discovery are DENIED.

STRUBHAR, P.J., and JOHNSON and LILE, JJ., concur.

CHAPEL, J., dissents.