2005 OK CR 2

**Jimmie Ray SLAUGHTER, Appellant**

**v.**

**STATE of Oklahoma, Appellee.**

**No. PCD–2004–277.**

Court of Criminal Appeals of Oklahoma.

Jan. 11, 2005.

Steven M. Presson, Robert W. Jackson, Jackson & Presson, Norman, OK, attorneys for petitioner on appeal.

Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, attorney for the State on appeal.

## OPINION DENYING SECOND APPLICATION FOR POST–CONVICTION RELIEF AND EVIDENTIARY HEARING

LUMPKIN, Vice–Presiding Judge.

¶ 1 Petitioner Jimmie Ray Slaughter was convicted of two counts of First Degree Murder in the District Court of Oklahoma County, Case Number CF–1992–82, and sentenced to death.[1] He appealed his conviction to this Court in Case No. F–1994–1312. We affirmed his convictions and sentences. *Slaughter v. State,* 1997 OK CR 78, 950 P.2d 839. Rehearing was denied on February 3, 1998. The U.S. Supreme Court denied certiorari review on October 5, 1998. *Slaughter*

*v. Oklahoma,* 525 U.S. 886, 119 S.Ct. 199, 142 L.Ed.2d 163 (1998).

¶ 2 Petitioner filed his first application for post-conviction relief on April 3, 1998. We denied relief. *Slaughter v. State,* 1998 OK CR 63, 969 P.2d 990. Thereafter, the Federal District Court and Tenth Circuit Court of Appeals denied habeas corpus relief, and the United States Supreme Court denied certiorari. *See Slaughter v. Mullin,* —— U.S. ——, 124 S.Ct. 1681, 158 L.Ed.2d 374, 2004 WL 194344 (U.S. March 22, 2004).

¶ 3 On March 19, 2004, Petitioner filed this, his second application for post-conviction relief, along with a motion for evidentiary hearing. The State filed its response to the second application for post-conviction relief on April 16, 2004.

¶ 4 On numerous occasions, this Court has set forth the narrow scope of review available under the amended Post–Conviction Procedure Act. *See e.g., McCarty v. State,* 1999 OK CR 24, ¶ 4, 989 P.2d 990, 993, *cert. denied,* 528 U.S. 1009, 120 S.Ct. 509, 145 L.Ed.2d 394 (1999). The Post–Conviction Procedure Act was neither designed nor intended to provide applicants another direct appeal. *Walker v. State,* 1997 OK CR 3, ¶ 3, 933 P.2d 327, 330, *cert. denied,* 521 U.S. 1125, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (interpreting Act as amended). The Act has always provided petitioners with very limited grounds upon which to base a collateral attack on their judgments. Accordingly, claims that could have been raised in previous appeals but were not are generally waived; claims previously raised on direct appeal are *res judicata. Thomas v. State,* 1994 OK CR 85, ¶ 3, 888 P.2d 522, 525 (Okl. Cr.1994), *cert. denied,* 516 U.S. 840, 116 S.Ct. 123, 133 L.Ed.2d 73 (1995).

¶ 5 The most recent revisions to the Act make it even more difficult for capital post-conviction applicants to avoid procedural bars. *Walker,* 1997 OK CR 3, ¶ 4, 933 P.2d at 331. Under 22 O.S.2001, § 1089(C)(1), only claims that "[w]ere not and could not have been raised in a direct appeal" will be

---

1. Petitioner was also convicted of five counts of perjury in this case and sentenced to consecutive terms of two, four, five, three, and one years imprisonment.

considered. *Id.*[2] Should a Petitioner meet this burden, this Court shall consider the claim only if it "[s]upport[s] a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." 22 O.S. 2001, § 1089(C)(2). As we said in *Walker:*

> The amendments to the capital post-conviction review statute reflect the legislature's intent to honor and preserve the legal principle of finality of judgment, and we will narrowly construe these amendments to effectuate that intent. Given the newly refined and limited review afforded capital post-conviction applicants, we must also emphasize the importance of direct appeal as the mechanism for raising all potentially meritorious claims. Because the direct appeal provides appellants their only opportunity to have this Court fully review *all* claims of error which might arguably warrant relief, we urge them to raise all such claims at that juncture.

*Walker,* 1997 OK CR 3, ¶ 5, 933 P.2d at 331 (footnote omitted, emphasis in original).

¶ 6 Pursuant to Rule 9.7(G) and 22 O.S. 2001, § 1089(D)(8), the Court cannot even consider the merits of a claim or grant relief unless the

> application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in a timely original application or in a previously considered application filed under this section, because the factual or legal basis for the claim was unavailable.

We now turn to Petitioner's claims.

■ ¶ 7 In proposition one, Petitioner claims he is entitled to post-conviction relief due to "newly discovered scientific evidence,"

unavailable at the time of trial, that "shows [he] is innocent of the crimes for which he was convicted." This alleged newly discovered evidence is a scientific test called "Brain Fingerprinting." Petitioner claims Brain Fingerprinting was not available to anyone in the world before July 1, 1999, when Dr. Lawrence A. Farwell, its inventor, made it available to the law enforcement and legal community.

¶ 8 Attached to the post-conviction application, Petitioner has presented Dr. Farwell's affidavit, indicating Dr. Farwell conducted Brain Fingerprinting testing on Petitioner on February 9–10, 2004. At that time, Dr. Farwell allegedly asked numerous details concerning "salient details of the crime scene that, according to [Petitioner's] attorneys and the records in the case, ... the perpetrator experienced in the course of committing the crime for which Mr. Slaughter was convicted."[3] According to Dr. Farwell, Petitioner's brain response to that information indicated "information absent." To Dr. Farwell, this reading indicates Petitioner does not have knowledge of these "salient features of the crime scene." Dr. Farwell indicates the statistical "confidence" of the Brain Fingerprinting test result is not less than 99%. He further indicates it is not possible to fake the results of the testing.

¶ 9 In his March 2004 affidavit, Dr. Farwell indicated he was preparing a comprehensive report detailing the nature of the test, the manner in which it was administered, and the results, which would be made available in the next few weeks. Six months have now passed, however, and this Court has received no such report.

¶ 10 Dr. Farwell makes certain claims about the Brain Fingerprinting test that are not supported by anything other than his

---

**2.** A capital post-conviction claim could not have been raised on direct appeal if: (1) it is an *ineffective assistance of trial* or appellate counsel claim which meets the statute's definition of ineffective counsel; or (2) the legal basis of the claim was not recognized or could not have been reasonably formulated from a decision of the United States Supreme Court, a federal appellate court or an appellate court of this State, or is a new rule of constitutional law given retroactive effect by the Supreme Court or an appellate court of

this State. A factual basis of a claim is unavailable on or before a date described ... if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date. 22 O.S.2001, §§ 1089(D)(4)(b), 1089(D)(9).

**3.** We have been provided no information, however, as to what those salient details may be, how or by whom they were formulated, or how they were communicated.

bare affidavit. He claims the technique has been extensively tested, has been presented and analyzed in numerous peer-review articles in recognized scientific publications, has a very low rate of error, has objective standards to control its operation, and is generally accepted within the "relevant scientific community." These bare claims, however, without any form of corroboration, are unconvincing and, more importantly, legally insufficient to establish Petitioner's post-conviction request for relief. Petitioner cites to one published opinion, *Harrington v. State*, 659 N.W.2d 509 (Iowa 2003), in which a brain fingerprinting test result was raised as error and discussed by the Iowa Supreme Court ("a novel computer-based brain testing"). However, while the lower court in Iowa appears to have admitted the evidence under non-*Daubert* circumstances, the test did not ultimately factor into the Iowa Supreme Court's published decision in any way.

¶ 11 Pursuant to Rule 9.7(D)(1)(a), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2004), affidavits and evidentiary materials filed in support of a post-conviction application are not part of the trial record but are only part of the capital post-conviction record. As such, those affidavits and evidentiary materials are not reviewed on their merits but are reviewed:

> [T]o determine if a threshold showing is met to require a review on the merits. If this Court determines that the requirements of Section 1089(D) of Title 22 have been met and issues of fact must be resolved by the District Court, it shall issue an order remanding to the District Court for a hearing on the merits of the claim raised in the application.

■ ¶ 12 Furthermore, post-conviction petitioners seeking a review of their post-conviction affidavits are required to file an application for evidentiary hearing. Rule 9.7(D)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2002). The application for evidentiary hearing and affidavits "must contain sufficient information to show this Court by clear and convincing evidence the materials sought to

be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." *Id.* If this Court determines "the requirements of Section 1089(D) of Title 22 have been met and issues of fact must be resolved by the District Court, it shall issue an order remanding to the District Court for an evidentiary hearing." Rule 9.7(D)(6), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2002).

¶ 13 Here, we find these affidavits and evidentiary materials do not contain sufficient information to show this Court by clear and convincing evidence that the materials sought to be introduced have or are likely to have support in law and fact to be relevant to his claim of factual innocence. What we have are some interesting, indeed startling, claims that are not backed up with enough information for us to act on them.

¶ 14 First and foremost, we have been provided no concrete evidence of Petitioner's Brain Fingerprinting claim. No written report has been submitted to this Court. None of the testing details or results have been provided.

¶ 15 Secondly, beyond Dr. Farwell's affidavit, we have no real evidence that Brain Fingerprinting has been extensively tested, has been presented and analyzed in numerous peer-review articles in recognized scientific publications, has a very low rate of error, has objective standards to control its operation, and/or is generally accepted within the "relevant scientific community." The failure to provide such evidence to support the claims raised can lead to no other conclusion, for post-conviction purposes, but that such evidence does not exist.

¶ 16 Third, the post-conviction record actually refutes some of Petitioner's claims. While Petitioner claims Brain Fingerprinting was not available to anyone in the world before July 1, 1999, the State's exhibits and indeed some of Dr. Farwell's own published articles indicate the science has been around for many years, at least since 1995 and probably for more than a decade before that.[4]

---

4. The so-called "P–300" component of Brain   Fingerprinting has apparently been recognized

Furthermore, an October 2001 report from the United States General Accounting Office to U.S. Senator Charles E. Grassley, reveals Dr. Farwell's acknowledgement that "MERMER has not undergone independent peer review testing and is not well accepted in the scientific community."

¶ 17 Fourth, we find some merit in the State's argument that the "salient" facts of the crime were introduced at Petitioner's trial through a technical investigator and crime scene reconstruction expert. Petitioner, who was present during this testimony, and his alleged negative response to such information during Brain Fingerprinting testing is, at the very least, curious.

¶ 18 Therefore, based upon the evidence presented, we find the Brain Fingerprinting evidence is procedurally barred under the Act and our prior cases, as it could have been raised in Petitioner's direct appeal and, indeed, in his first application for post-conviction relief. We further find a lack of sufficient evidence that would support a conclusion that Petitioner is factually innocent or that Brain Fingerprinting, based solely upon the MERMER effect, would survive a *Daubert* analysis.

■ ¶ 19 In proposition two, Petitioner claims "DNA testing, in progress, will provide exculpatory evidence also showing Petitioner's innocence." However, no supporting evidence was presented at the time the second post-conviction application was filed.

¶ 20 However, one month later, Appellant submitted his Second Notice to the Court Concerning DNA Testing. Attached to that document, he submitted a report from Mitotyping Technologies, LLC, which indicates a hair obtained from the crime scene, designated the "Q hair from sheet," was submitted for analysis and was found to support the conclusion "that Octavia Vicki Mosley

(2420K1) and her maternal relatives are excluded from the mixture observed in 2420Q1." [5]

■ ¶ 21 However, because Petitioner did not submit any supporting DNA evidence with his original, or for that matter, his second post-conviction application, his claims relating to DNA testing are barred from review. *See* 22 O.S.2001, § 1089(D)(2) ("All grounds for relief that were available to the applicant before the last date on which an application could be timely filed not included in a timely application should be deemed waived. No application may be amended or supplemented after the time specified under this section."); Rule 9.7(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2004) (No application may be amended or supplemented after the time specified in Section 1089(D) of Title 22. The Court shall not consider in the original application any amendments to the application or supplementations not filed in accordance with Rule 9.7(D).)

¶ 22 Even had the evidence been timely submitted with Petitioner's application, no post-conviction relief would be warranted. The ability to test for DNA was available and could have been presented at Petitioner's trial in 1994. *See, e.g., Sadler v. State*, 1993 OK CR 2, 846 P.2d 377 (discussing the failure of the State to disclose DNA testing it had conducted). Most certainly, such evidence could have been presented during Petitioner's first post-conviction application in 1998.

¶ 23 Moreover, the Vicki Mosley hair evidence was only one circumstantial, theoretical piece of the puzzle, as the prosecutors presented a strong evidentiary case of guilt against Petitioner, including his presence in the neighborhood around the time of the crime, inculpating statements he made to

by the scientific community for many years, but Dr. Farwell's test also measures the "MERMER" effect.

5. In other words, the crime scene hair did not match a hair submitted by Petitioner's then coworker, Vicki Mosley. At trial, one of the alternative theories the prosecutors had presented to the jury was that Petitioner had intentionally or accidentally placed this hair at the scene of the crime in order to establish an alibi. Indeed, the

prosecution presented expert "hair comparison" testimony on this issue, indicating the hair found at the scene was similar to Ms. Mosley's hair. The prosecutor theorized that the hair belonged to Ms. Mosley and that Petitioner had taken the hair from her or accidentally left it at the same. Because Ms. Mosley worked with Petitioner, the presence of the Mosley hair at the scene would be damaging.

third parties, carvings on one of the victims that resembled symbols in Petitioner's occult books, the absence of a knife Petitioner had purchased that had matching dimensions to Melody Wuertz's stab wounds, Petitioner's receipt of certain Negroid hairs from Cecilia Johnson to plant at the crime scene, and strong evidence of motive. Thus, even assuming the validity and timely filing of the DNA evidence Petitioner has now provided, this post-conviction record lacks sufficient evidence that would support a conclusion that Petitioner is factually innocent. Proposition two is therefore denied.

¶24 Petitioner's third claim, a challenge to bullet composition analysis performed during his trial, was not submitted with his second application for post-conviction relief. As such, his April 12, 2004 request to supplement his post-conviction application with an entirely new claim and supporting documentation is untimely and will not be considered. 22 O.S.2001, § 1089(D)(2); Rule 9.7(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2004).[6]

### DECISION

¶25 After carefully reviewing Petitioner's Application for post-conviction relief, motion for evidentiary hearing, and other filings we find Petitioner's Second Application for Post–Conviction Relief, Motion for Evidentiary Hearing, Motion to Hold Post–Conviction Case in Abeyance, and Requests to Supplement are **DENIED.**

JOHNSON, J. and LILE, J.: concur.

CHAPEL, P.J.: concur in result.

6. Moreover, the research upon which this claim is based was published in July of 2002, nearly two years before Petitioner's April 2004 filing. Thus, it fails to comply with the sixty (60) day rule provided in Rule 9.7(G)(3).